**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TERRI LEE MEYERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-117-SLR |
| | ) | |
| DEPARTMENT OF CORRECTION, | ) | |
| et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## STATE DEFENDANTS' ANSWER IN OPPOSITION TO PLAINTIFF'S APPLICATION FOR INJUNCTIVE RELIEF

Paul Howard, Stan Taylor, Patrick Ryan, George O'Connor and Captain Douglas Repetti, State Defendants, by and through their undersigned counsel, hereby urge this Honorable Court pursuant to Federal Rule of Civil Procedure Rule 65 to deny Plaintiff's application for injunctive relief. To support their opposition for injunctive relief, State Defendants respond as follows:

### FACTUAL BACKGROUNDAND PROCEDURAL HISTORY

1.      Terri Lee Meyers, Plaintiff, currently incarcerated at the Delores J. Baylor Women's Correctional Institution ("BWCI"), has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 on February 23, 2006 against Commissioner Taylor, Bureau Chief Howard, Warden Ryan, Librarian O'Connor, Treatment Administrator Shotzberger and Captain Repetti. Plaintiff is seeking injunctive relief against these prison officials for allegedly retaliating against her for exercising her First Amendment Right to seek redress from the Courts. Plaintiff claims that the prison officials have prevented her from filing a lawsuit revealing prison abuses by denying her access to her legal research, legal

documents, and access to the law library. Not only does Plaintiff fail to identify the specific conduct which demonstrates a wrongful interference with her constitutionally protected right to access the courts, but also, she fails to specify the involvement that these Defendants had in furtherance of the alleged deprivation.

State Defendants deny Plaintiff's claims of retaliation and offer this response in opposition to Plaintiff's motion seeking injunctive relief.

**LEGAL STANDARD**

2.      Federal Rules of Civil Procedure Rule 65(a) sets out the standard to bring into play injunctive relief. "[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989) (quoting *Frank's GMC Truck CTR., v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). The decision to grant or deny a motion for injunctive relief rests with the sound discretion of the district judge. *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc.*, 630 F.2d 120, 136 (3d Cir. 1978).

3.      The purpose of injunctive relief is to address a presently existing threat. *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (quoting *Holiday Inns of Am., Inc. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969). Therefore, the party seeking an injunction must demonstrate that the threatened injury is immediate.

4.      In order to grant injunctive relief, the court must be sufficiently satisfied that the party seeking relief has demonstrated a reasonable probability of success on the merits; immediate and irreparable injury will suffer if relief is denied; a grant of relief will not result in greater harm to the other party; and the public interest will be served by

the grant of injunctive relief. *Clear Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir. 1995); *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). "All four preliminary injunction factors should favor preliminary relief before injunction will issue." *S & R Corp. v. Jiffy Lube Inter., Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

**PLAINTIFF CANNOT SHOW LIKELIHOOD OF SUCCESS ON THE MERITS OF THE RETALIATION CLAIM**

5.     The Third Circuit defined the elements of a prisoner's cause of action for retaliation and the burden he must carry to succeed on that claim. *See Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001). The court established a three prong test to determine whether retaliation has occurred. The first *Rauser* prong requires a prisoner to prove that he engaged in constitutionally protected conduct which led to the alleged retaliation. In keeping with the *Rauser* analysis, the second prong requires the prisoner to show that he has suffered some adverse action at the hands of prison officials. The third *Rauser* factor requires the prisoner to establish a causal link between the constitutional right exercised, and the adverse action taken against him. *Rauser*, 241 F.3d at 333 (citing *Allah v. Seiverling*, 229 F.3d 220, 225 (3d. Cir. 2000)). If the plaintiff can show that the constitutionally protected conducted "was a substantial or motivating factor in the challenged decision, prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

6.     Indeed, a prisoner has a constitutional due process right of access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977); *Lewis v. Casey*, 518 U.S. 343 (1996). However, "inmates do not possess a special First Amendment right to provide legal

assistance to fellow inmates that enhances the protections otherwise available under *Turner*." *Shaw v. Murphy*, 532 U.S. 223 (2001). In the instant case, assuming arguendo, Plaintiff has demonstrated she has engaged in constitutionally protected conduct leading to her claim of retaliation, she must demonstrate that actions taken by the defendants are the result of retaliatory motivation.

7.    Plaintiff's conduct leading to her claim of retaliation begins with her access to legal research, legal documents and access to the law library as an inmate law library clerk at the BWCI. She worked as an inmate law library clerk from July 11, 2005 until January 26, 2006. See George O'Conner Affidavit attached as Exhibit "A". During that time as a library clerk, Plaintiff was responsible for assisting fellow inmates with library services, including helping them with their legal research, preparing legal documents and assisting them to make telephone calls to their respective legal representatives. Exhibit A

8.    On or about January 26, 2006, librarian George O'Connor recommended Plaintiff's library clerk privileges to be terminated because Plaintiff continuously flouted the rules and regulations for inmate law library use. Exhibit A at attachment "1". For example, in order to assist inmates with library services, Plaintiff abused her clerk's position by charging inmates a fee for her assistance. See Exhibit A. In essence, Plaintiff was engaged in the unlawful practice of law for the payment of money and/or commissary items for her legal assistance. Id. She also removed library books from the library without permission. Id. As a result, Plaintiff was removed from her position as a librarian's assistant.

9.    Plaintiff has failed to produce substantial evidence that Commissioner

Taylor, Bureau Chief Howard, Warden Ryan, Librarian O'Connor, Treatment

Administrator Shotzberger and Captain Repetti denied her access to her legal research,

legal documents, and access to the law library. Moreover, she has failed to demonstrate

that prison officials took adverse action against her for pursuing legal redress. Yet, she

urges the court to prevent Defendants from retaliating against her for "speak[ing] up for

what's right" (D.I. 5).

10.    There is no sufficient record evidence that State Defendants have refused

appropriate accommodations for Plaintiff's access to court needs. To the contrary,

inmates at BWCI are provided an inmate handbook that lists available programs and

services, including use of the law library services. See Exhibit "A". Specifically, the

inmate handbook outlines the procedures an inmate must follow to use the library. Id.  At

the very least, since working as a library assistant, Plaintiff is aware of the rules and

regulations pertaining to access to the law library. Id.  However, a careful review of the

law library appointment printouts and BWCI law library sign-in sheets maintained for

institutional purposes shows that Plaintiff has not signed up for law library visits or for

legal assistance on pending matters to date. Id.

11.    Clearly, the record does not support that Plaintiff was denied access to

legal research, legal documents or access to the law library. In fact, all inmates regardless

of their housing units or medical conditions are eligible to access the library services free

of charge. Plaintiff cannot demonstrate that any constitutionally protected conduct was a

"substantial or motivating factor" in the alleged retaliatory conduct. Contrary to claims of

retaliatory adverse treatment, Defendants O'Connor, Shotzberger and Ryan's actions in

removing Plaintiff from a position where she abused her privileges and took advantage of

fellow inmates for her personal gain, were reasonably related to legitimate penological objectives. The inmate rules of conduct identify extortion as a class one disciplinary infraction. Abuse of privileges and possession of non-dangerous contraband are class two offenses. All disciplinary infractions may be subject to disciplinary action. (See Inmate Rules of Conduct attached as Exhibit "B").

12.    In the instant case, Plaintiff acknowledges that she has utilized the law library services to research and prepare legal documents. However, during the times that she was to assist inmates, she improperly charged them fees. In fact, a review of inmate grievance forms indicates that Plaintiff requested $5.00 dollars to assist an inmate with making a telephone call, and she requested a six pack of Mountain Dews and a bag of regular potato chips (commissary items) in exchange for doing her job as a library assistant. See Dorio Grievance Form attached as Exhibit "C". In another instance, Plaintiff "Terry Myers tried to charge me $15.00 for doing some legal work for me. I refused to pay her so my motion for visitation of my child was never filed. Then when I went on 10/13/05 to file for a modification at the law library, she was mad and didn't want to help me do it!" See Brooks Grievance Form attached as Exhibit "D" . Such practices are clearly an abuse of the library privileges afforded Plaintiff, and a blatant disregard for institutional rules and regulations promulgated by Commissioner Taylor. Plaintiff's use of her position as a library clerk to extort money from other inmates certainly creates enormous tension amongst inmates. In turn, this inmate tension creates a great security risk within the prison administration. Exhibit A. Prison administrators have a legitimate interests in managing institutional security and safety. *Turner v. Safely*, 482 U.S. 78, 89 (1987). To curtail abuses of library privileges, as is evident in this case,

enforcement of the inmate rules of conduct is necessary. Yet, Plaintiff seeks to invoke the court's power to issue an extraordinary writ as injunctive relief merely to compel the prison officials to comply with her ever unreasonable demands for unregulated library privileges. Clearly, Plaintiff's request exceeds her ability to provide legal assistance to fellow inmates.

13.     Although Plaintiff must satisfy this second requirement by indicating the action was sufficient to deter a person of ordinary firmness from exercising her constitutional right, State Defendants contend that they have taken no action against Plaintiff to deter her pursuit of her lawsuit. Moreover, there is no record evidence sufficient to support Plaintiff's claim that retaliatory action was taken against her.

14.     Initially, Plaintiff must show that her constitutionally protected conduct was a substantial or motivating factor in the decision to discipline her or retaliate against her. *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977). However, under the burden-shifting framework used to decide whether retaliation occurred, Defendants must then prove by a preponderance of the evidence that they would have taken the same action even in the absence of the protected activity. *Rauser*, 241 F. 3d at 333. In *Turner v. Safely*, our Supreme Court in considering the difficult tasks of prison administration held that a prison regulation that impinges on the constitutional rights of an inmate is valid if it is "reasonably related to legitimate penological interests." 482 U.S. at 89. Thus, Plaintiff must at the outset prove that her exercise of a constitutional right was a substantial or motivating factor in the challenged decision. However prison officials may refute this claim by showing that they would have acted in the same manner absent the protected

conduct for reasons reasonably related to valid penological interests. Upon such a

showing, they must prevail over Plaintiff's retaliation claims.

15.    In the beginning, Plaintiff describes the adverse action taken by the prison

officials, specifically the law librarian at BWCI, as a refusal to permit her library

privileges. This refusal, Plaintiff claims, is an effort to prevent her from pursuing her

lawsuit wherein she seeks "to speak up for what's right" (D.I. 5). The challenged action

of regulating Plaintiff's library privileges is merely a legitimate penological interest to

control and manage the prisons safety and security while providing inmates assistance

with their legal needs. Exhibit A. Indeed, the prison administrators have a legitimate

penological interest in maintaining order and preventing tensions created among inmates

when abuse occurs in both rendering and seeking legal assistance. See *Turner v. Safely*,

*supra*.

**PLAINTIFF CANNOT MAKE A CLEAR SHOWING OF IRREPARABLE HARM**

16.    Plaintiff requests the Court to protect her from a housing or job transfer.

She appears to elicit the court's intervention to decide her prison classification and

employment status. Specifically, Plaintiff informs the court that she is not working in the

law library at this time but may be in the future if the court grants her injunctive relief.

(D.I. 5, pg. 6). Plaintiff seeks to encourage the Court to disregard the judgment of prison

authorities and dictate the prison administrators' ability to regulate an inmate's

institutional classification.

17.    However, this court has consistently recognized that the State of Delaware

has created no constitutionally protected interest in a prisoner's classification. *See Brown

v. Cunningham*, 730 F. Supp. 612, 614-615 (D. Del. 1990) (finding that Delaware statutes

and regulations vest discretion in the Department of Correction to determine an inmates classification). "Even if the transfer works an adverse change in the conditions of confinement, as long as the conditions do not otherwise violate the U.S. Constitution, the transfer does not rise to the level of a constitutional claim." *Carrigan v. State of Delaware*, 957 F. Supp. 1376 (D. Del. 1997) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Plaintiff is unable to demonstrate that a transfer has created an "atypical significant deprivation" of a constitutionally protected interest. *Sandin v. Conner*, 515 U.S. 472 (1995). Therefore, the transfer is not sufficient to satisfy the irreparable harm requirement for injunctive relief. Moreover, Plaintiff's allegations hardly demonstrate a real and serious injury warranting protection. Absent an actual or threatened injury to a legal right, Plaintiff's request must be denied. *See Acierno v. New Castle County*, 40 F.3d 645, 655 (3d Cir. 1994).

18.    All the same, to succeed, Plaintiff must demonstrate that the threatened injury is immediate and clearly shown. *Acierno v. New Castle County*, 40 F.3d at 645. (inability to precisely measure financial harm does not constitute irreparable harm). Plaintiff has failed to make an adequate showing that she faces immediate and irreparable harm.

19.    Lastly, the Plaintiff does not consider the effect of the injunction on other interested persons as well as the public interest in general. A prisoner does not have a free standing right to receive legal advice. In accordance with right-to-access precedents, inmates have a right to receive legal advice from other inmates only when it is a necessary "means for ensuring a 'reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Shaw v.* Murphy, 532 U.S.

223 (2001) (quoting *Lewis v. Casey*, 518 U.S. 343 at 350-51. Prison regulations governing access to the law library are related to legitimate penological interests.

**CONCLUSION**

        Based on the reasons set forth above, Commissioner Taylor, Bureau Chief Howard, Warden Ryan, Librarian O'Connor, Treatment Administrator Shotzberger and Captain Repetti contend that the Plaintiff has not demonstrated an adequate showing to warrant the extraordinary relief that she is requesting. Therefore, State defendants respectfully request the Court deny Plaintiff's motion for injunctive relief.

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. No. 3879
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302) 577-8400
ophelia.waters@state.de.us
Attorney for State Defendants

DATE: April 21, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TERRI LEE MEYERS,                      )
                                       )
                   Plaintiff,          )
                                       )
         v.                            )          C.A. No. 06-117-SLR
                                       )
DEPARTMENT OF CORRECTION,              )
et al,                                 )
                                       )
                                       )
                                       )
                   Defendants.         )

## <u>ORDER</u>

         AND NOW, this _____ day of _____, 2006, upon

consideration of plaintiff's Motion for Injunction and the Response of Commissioner

Taylor, Bureau Chief Howard, Warden Ryan, Librarian O'Connor, Treatment

Administrator Shotzberger and Captain Repetti, IT IS HEREBY ORDERED that

plaintiff's Motion for Injunction is DENIED.


                                       _____
                                       United States District Judge

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2006 I electronically filed *State*

*Defendants' Answer in Opposition to Plaintiff's Application for Injunctive Relief* with the

Clerk of Court using CM/ECF.  I hereby certify that on April 21, 2006, I have mailed by

United States Postal Service, the document to the following non-registered participant:


Terri Lee Meyers, Inmate
SBI # 00371169
Baylor Women's Correctional Institution
660 Baylor Boulevard
New Castle, DE 19720



                                        /s/ Ophelia M. Waters_____
                                        Deputy Attorney General
                                        Department of Justice
                                        820 N. French Street, 6th Floor
                                        Wilmington, DE 19801
                                        (302) 577-8400
                                        ophelia.waters@state.de.us

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERRI LEE MEYER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 06-117-SLR |
| | ) |
| | ) |
| DEPARTMENT OF CORRECTION, | ) |
| PAUL HOWARD, STANLEY TAYLOR, | ) |
| PARTICK RYAN, WCI SUPERVISOR, | ) |
| GEORGE O'CONNOR, COLLEEN | ) |
| SHOTZBERGER, CAPT. NFN | ) |
| REPETTI, CORRECTIONAL MEDICAL | ) |
| SERVICES, DR. HOOPER, and DR. | ) |
| NFN JACOVB, | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF GEORGE O'CONNOR

I, George O'Connor, having been duly sworn according to law do hereby state the following:

1. I make the following statements based upon my personal knowledge, and specialized training and experience as a Department of Correction employee.

2. I have been employed with the Delaware Department of Correction since October 18, 2004. Currently, I am the Paralegal/Law Librarian at the Baylor Women's Correctional Institution (BWCI) located in New Castle, Delaware. I have held this position since July 11, 2005. My duties include facilitating communications between inmates and the courts through law library services. This is accomplished through the use of the telephone as well as written communications. I also make possible Family Court Mediations between inmates and other parties via teleconference. I am responsible for

maintaining the legal collections, supervising the use of the BWCI inmate law library, supervising the inmate law clerk, scheduling law library appointments and recording/maintaining data on law library use by the BWCI inmate population.

3. Inmates at BWCI are provided with an inmate Handbook that informs them of programs and services available to them, including law library services and how to gain access to the law library. The law library is open Monday through Friday (except on legal holidays). In addition to assistance with legal research, inmates are provided court forms such as motions and petitions free of charge upon request. Inmates with pending court filing deadlines must notify me to be given priority scheduling.

4. All inmates, irrespective of their housing areas, must sign the scheduling sheet posted in each housing unit to access the law library services. Each housing unit is assigned specific days for attendance in the library. Scheduling is necessary to maintain order with the inmate movement in the facility. Institutional security and safety for inmates and staff is paramount.

5. An inmate housed in a maximum security housing unit such as death row is provided in-cell paralegal assistance upon request. I conduct a personal interview with the inmate to determine what assistance is needed. I perform the legal research and/or make the requested telephone calls needed to assist in resolution of the legal issues. When I complete the research and inquiries I provide the results to the inmate.

6. Arrangements are made with the security staff for escort to the law library of inmates housed in the infirmary/medical unit seeking library assistance when needed.

7. Terri Lee Meyers was the inmate law library clerk working in the BWCI law library under my supervision from July 11, 2005 until January 26, 2006. I recommended

her termination and reclassification after she repeatedly failed to comply with the library rules of conduct. For example, Terri Lee Meyers used her position as a library assistant to extort money and commissary items from fellow inmates in need of paralegal assistance. Ms. Meyers also took law books from the law library against my specific direction to dispose of the replaced legal volumes. (See Attachment 1).

8. Terri Lee Meyers is well aware of the procedures in place and services provided at the BWCI Law Library. However, to date she has not signed up for law library visits or assistance since she was removed from the inmate law library clerk position.

9. I have not received any letters or other form of communication from Terri Lee Meyers requesting access to the law library or for assistance with her legal issues.

George O'Connor

SWORN TO AND SUBSCRIBED before me this 21ᵗʰ day of April 2006.

_____
Notary

**BRENDA P. BROWN**
**NOTARY PUBLIC, STATE OF DELAWARE**
**My Commission Expires October 17, 2009**

STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELORES J. BAYLOR WOMEN'S CORRECTIONAL INSTITUTION
660 BAYLOR BOULEVARD
NEW CASTLE, DELAWARE 19720

Telephone: (302)577-3004
(302)577-3005
Fax: (302)577-5849

**TO:** Classification Committee

**FROM:** George P. O'Connor Paralegal II / Law Librarian

**DATE:** January 26, 2006

**RE:** Termination of Terri Meyer as the B.W.C.I. Law Clerk

This is to inform you that inmate Terri Meyer, SBI#:00371169, as of today have been terminated as the B.W.C.I. Law Clerk.

Her continued refusal to follow the rules, regulations and direction of her immediate supervisor can no longer be tolerated. Numerous attempts have been made over the course of the last six months, to talk with Terri, in effort to rectify this situation and get her to conform.

She continues to be defiant and doses things the way she wants to do them in total disregard of anyone in authority.

Therefore, it is with great regret that I have to terminate Terri from the position of Law Clerk and refer her to the classification board for further consideration if any.

Respectfully Submitted,

George P. O'Connor

George P. O'Connor
Paralegal II / Law Librarian

**CC:** Patrick J. Ryan, Warden
Colleen Shotzberger, Treatment Services Administrator
Sharlene Hudson, Sr. Counselor



## LAW LIBRARY

# *Rules of Conduct*

§   No eating or drinking
§   When entering the Law Library sign in with the Clerk
§   Notify the Clerk before leaving for any reason
§   Do not remove any items from the Law Library
§   Keep noise to a  minimum
§   Inmates will be seen in alphabetical order
§   Only copies of  legal work and documents will be provided
§   Return all pens and pencils provided by the Clerk
§   Phone calls can only be made to Public  Defenders, Attorneys, and  Courts  (for  fines only)  No personal calls – Do not ask

**Thank You**

Mackinnon G. Young   Paralegal II

## FIRE SAFETY/EVACUATION

Fire drills will be conducted periodically. If fire alarms sound, stand by your door and follow the directions of your officer. Please take these drills seriously.

If fire is contained in the unit, residents are escorted single file to the gym. You must remain quiet until each person is accounted for by security.

Evacuation maps are posted throughout the institution.

## COSMETOLOGY

Our salon provides services to all residents. Services include normal hair cuts, perms, and relaxers.

You must submit a written request stating specifically what services you need and place it in the appropriate bag in your unit. Requests are picked up on Sundays and appointments will be scheduled the following week.

You must supply all hair products (shampoos, gels, etc.). If unable to do so, you must consult the staff supervisor to work out arrangements for these products.

Although operators are knowledgeable and have experience with hair care, the institution is not responsible for any unsatisfied customers. Shop hours of operation are Monday through Saturday 6:30 am to 3:30 pm.

## GRIEVANCE

When you can not resolve complaints by any other means, the Department of Correction has a formal grievance procedure. Grievance forms can be obtained from your unit officer. Any legitimate complaints regarding policies and other conditions within the jurisdiction of the Department of Correction should be clearly and concisely described on the form. (Please note: You can not grieve classification decisions, disciplinary actions, and other inmates).

The case is forwarded to the Resident Grievance Committee which consists of staff and residents. They meet on an as needed basis and make recommendations to the Warden (or designee) for review.

All grievances (including medical) should be placed in the grievance box located in each unit. Grievances will be picked up on a daily basis by the Inmate Grievance Chairperson.

For more information on the grievance procedure and the appeal process, consult section 4.4 of the Bureau of Prisons Standard Operating Procedures.

## DISCIPLINARY INFRACTIONS

When living at the facility, there are certain rules governing your behavior. The following is a list of Class I and Class II offenses:

### Class I Offenses

1.01 Arson
1.03 Bribery
1.04 Damage or Destruction of Property Over $10
1.05 Demonstration (strike)
1.06 Disorderly or Threatening Behavior
1.07 Engaging in a Riot
1.08 Escape and Attempt to Escape
1.09 Extortion, Blackmail or Protection
1.10 Failure to Abide by Sanctions or Conditions
1.11 Falsifying Physical Evidence
1.12 Felony
1.13 Fighting
1.14 Forgery, Counterfeiting
1.15 Giving a False Alarm
1.16 Homicide
1.17 Inciting to Riot
1.18 Possession of Dangerous Contraband
1.19 Possession of Money and Coin Over $1
1.20 Possession of Staff Clothing
1.21 Receiving Stolen Property
1.22 Refusal to Cooperate in Drug Abuse Testing
1.23 Restraint
1.24 Sexual Assault
1.25 Sexual Misconduct
1.26 Substance Abuse
1.27 Theft

### Class II Offenses

2.01 Abuse of Privileges
2.02 Bartering
2.03 Creating a Health, Safety or Fire Hazard
2.04 Damage or Destruction of Property Under $10
2.05 Disrespect
2.06 Failing to Obey an Order
2.07 Gambling
2.08 Horseplay
2.09 Late for an Appointment
2.10 Lying
2.11 Off Limits
2.12 Possession of Money and Coin Under $1
2.13 Possession of Non-dangerous Contraband
2.14 Unauthorized Communication

Failure to abide by such rules may result in one or more of the following disciplinary actions:

Counseling (Verbal/Written)
Loss of Recreation, Phone, TV/Radio
24 Hour Loss of All Privileges (LOAP)
Adjustment Board Hearing
Loss of Good Time
Isolation
Criminal Prosecution

**FORM #584**

**GRIEVANCE FORM**

FACILITY: **BWCI**     DATE: **10/16/05**

GRIEVANT'S NAME: **Theresa DORIO**     SBI#: **251554**

CASE#: _____     TIME OF INCIDENT: **8/26/05 12:30pm**

HOUSING UNIT: **3-D**

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

On 8/26/05 I requested from c/o Ms. Davis, if I could get permission to go to Law Library - I received a certified letter from the courts - ref- finis. Terry Myers + I spoke in chow hall - she said it would cost me $5.00 to get phone call that day, I said fine. I got called to law library - 10:30 went and made phone call. Terry came to me on 8/28/05, 9:Am, told me to order (a pack of MT Dews 2 bags of Reg. Pot. Chips, I did - she received those items on 9/2/05. (OVER)

ACTION REQUESTED BY GRIEVANT:

I want Terry to stop charging inmates to do her job - She should be reprimanded. I leave this in your hands. "We are all inmates!"

GRIEVANT'S SIGNATURE: **Theresa Dorio**     DATE: **10/16/05**

WAS AN INFORMAL RESOLUTION ACCEPTED? _____(YES) _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____     DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

On 8/26/05, once I returned from Law library, I spoke with Marian Rogers & Larette Brice, which in turn told them about having to pay for Phone call, they told C/O Davis, & then I proceeded to tell Davis, she advised she should not be charging me, that was all that was said.

This is why I Paid Terry, I did not want problems.

Spoke to Terry on 9/18/05, to have her file papers in regards to my case, she said something about form 305 or 309 & it would cost me 30.00 - 40.00 to file. I advised her I'd get back with her.

I spoke to Terry last week regarding this form, she said write Kline, get case #, & she would get me a price for filing - But Ms. Kline has not responded with case #, she advised to get with the courts, to get original paperwork, so the correct papers could be filed.

FORM #584

GRIEVANCE FORM

FACILITY: BWCJ                          DATE: 6/16/05
GRIEVANT'S NAME: Shannan Brooks         SBI#: 00347486

CASE#:_____                   TIME OF INCIDENT:_____

HOUSING UNIT: B_____

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

Terry Myers closed to charge me 15⁰⁰ in
commissary for dairy same deal I used for
me. I received no paper so my motion
for visitation of my child was never filed
then when I went on 10/13/05 to file
for a modification at the law library
she was rude and didn't want to help
me do it!

ACTION REQUESTED BY GRIEVANT:_____

GRIEVANT'S SIGNATURE: Shannan Brooks    DATE: 6/16/05

WAS AN INFORMAL RESOLUTION ACCEPTED? _____(YES) _____(NO)

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____     DATE:_____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV