# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TERRI LEE MEYER,<br>      Plaintiff,<br><br>vs.<br><br>PATRICK RYAN, Warden, Delores J. Baylor Women's Correctional Institution, COLLEEN SHOTZBERGER, Treatment Services Administrator, and GEORGE O'CONNOR, Law Librarian, in their individual and official capacities,<br>      Defendants. | CIVIL ACTION<br><br>NO. 06-117-SLR<br><br>JURY TRIAL DEMANDED |

## FIRST AMENDED COMPLAINT

Plaintiff Terri Lee Meyer ("Plaintiff"), by her undersigned counsel, brings this First Amended Complaint in the nature of a civil rights action by a state prison inmate, pursuant to 42 U.S.C. §1983 and the United States Constitution, seeking compensatory and punitive damages, as well as injunctive relief, for adverse actions taken against her in violation of her constitutional rights and in retaliation for exercising her constitutional right of access to the courts, as follows:

## PARTIES

1. Plaintiff is a citizen of the United States and the State of Delaware, and, at all times relevant to the events described in this First Amended Complaint, has been in the custody of the Delaware Department of Correction (the "DOC") at the Delores J. Baylor Women's Correctional Institution ("WCI"), New Castle, Delaware.

2. At all times relevant to the events described in this First Amended Complaint, Defendant Patrick Ryan was employed by the DOC as Warden of WCI.

3. At all times relevant to the events described in this First Amended Complaint, Defendant George O'Connor was employed by the DOC as Librarian of the WCI Law Library.

1

4. At all times relevant to the events described in this First Amended Complaint, Defendant Colleen Shotzberger was employed by the DOC as Treatment Services Administrator at WCI. It was and is common practice for Defendant Shotzberger, among other things, to oversee the functioning of the Law Library and the work of Defendant O'Connor.

5. At all times relevant to the events described in this First Amended Complaint, Defendants were employed by the DOC and acting under color of the law of the State of Delaware.

## JURISDICTION AND VENUE

6. This court has jurisdiction of Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3), (4).

7. All of the acts, events, transactions, and occurrences giving rise to this Complaint occurred in this District.

## FACTS COMMON TO ALL COUNTS

8. Plaintiff has been in the custody of the DOC at WCI since 1997.

9. Plaintiff has faced and now faces a risk of substantial and irreparable harm due to the actions of the Defendants as set forth in this First Amended Complaint.

10. During her incarceration at WCI, Plaintiff was employed in the WCI Law Library as Clerk.

11. Plaintiff worked as Clerk in the WCI Law Library for approximately four years, beginning in 2002.

12. From the beginning of her service as Clerk until the incidents related to this action, Plaintiff received no write-ups, formal complaints, or any other disciplinary action related to her work at the WCI Law Library.

13. In or about July 2005, Defendant O'Connor became the Law Librarian at WCI.

14. Sometime in the summer of 2005, after Defendant O'Connor became Law Librarian, Plaintiff began research, drafting, and related legal work on a constitutional civil rights lawsuit against various WCI employees (the "Omnibus Civil Rights Complaint").

15. The work on the Omnibus Civil Rights Complaint quickly produced voluminous amounts of paperwork and hard copies of notes, drafts, and research.

16. Plaintiff produced and electronically stored certain documents, including complaint drafts and research, on the hard drive of a computer in the WCI Law Library.

17. In its draft form, the Omnibus Civil Rights Complaint alleged multiple constitutional claims of grave concern to the courts, the public, and the inmate population at WCI, including claims under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

18. The Omnibus Civil Rights Complaint was not frivolous, and it alleged various facts to support its constitutional claims, including claims related to inmates being housed in closets without access to water or toilets; sexual abuse; retaliation for using the Inmate Grievance Procedure; and other claims.

19. Sometime in late 2005, Defendants became aware of Plaintiff's work on the Omnibus Civil Rights Complaint.

20. After discovering the Omnibus Civil Rights Complaint, Defendant O'Connor became verbally and psychologically abusive toward Plaintiff in retaliation for her work on the Omnibus Civil Rights Complaint and in order to impede her continued work on it, by taking the following actions:

      a. Defendant O'Connor used scissors to destroy the plants Plaintiff cared for in the WCI Law Library;

      b. Defendant O'Connor set arbitrary rules and selectively and capriciously applied them to cause Plaintiff distress and to deny her the opportunity to continue her work on the Omnibus Civil Rights Complaint;

      c. Defendant O'Connor prevented Plaintiff from spending time in the WCI Law Library to perform legal research on the Omnibus Civil Rights Complaint;

      d. Defendant O'Connor permitted unsafe conditions in the Law Library by routinely leaving Plaintiff alone with up to 15 unattended inmates at a time; and

      e. Defendant O'Connor punitively ordered Plaintiff to perform janitorial tasks in the Law Library, which he knew Plaintiff's physical limitations did not allow her to perform, and indicated that her continued employment would be conditioned on performance of these additional duties.

      f. Also in late 2005, Defendants O'Connor and Shotzberger instructed Plaintiff to decrease the level of assistance she was providing to other inmates in the Law Library.

      g. Defendants O'Connor and Shotzberger falsely accused Plaintiff of rule violations.

21. As a result of a directive and policy decision from Defendant Shotzberger, in or around November 2005, Defendant O'Connor removed all copies of the WCI Inmate Grievance Procedure and policy manuals, including those pertaining to disciplinary procedures, from the Law Library.

22. On or about January 24, 2006, Plaintiff was summoned from the WCI Law Library to her room, where Defendant Ryan verbally accosted and reprimanded Plaintiff for the unauthorized possession of plants in her room, even though WCI employees had given her the plants, which she had kept for several years, and Plaintiff's attachment to the plants was well known.

23. On or about January 24, 2006, Defendant Ryan threatened to remove Plaintiff from the WCI "Honor Pod," citing unauthorized possession of the plants as his justification.

24. Defendant Ryan then ordered Plaintiff's plants to be destroyed and the plants were removed from her room.

25. In late January 2006, Plaintiff was transferred from the minimum security Honor Pod to the Mental Health Unit (Unit 6).

26. In late January 2006, Defendants and/or their agents confiscated all of Plaintiff's writings, legal notes, memoranda, research, case law, law books, and drafts of the Omnibus Civil Rights Complaint.

27. Defendants continue to withhold the most recent version of the draft Complaint, which Plaintiff stored electronically on the hard drive of the Law Library computer and downloaded as a hard copy, as well as notes and other information related to the Complaint that Plaintiff had stored on the Law Library computer.

28. On or about January 27, 2006, Defendants terminated Plaintiff from her job at the WCI Law Library.

29. Following Plaintiff's termination, Defendant O'Connor told Plaintiff that, per Warden Ryan's instructions, she was banned from the WCI Law Library and not permitted to

return until further notice; that she could no longer perform legal work on her own behalf; and that she could not have any legal materials in her possession.

30. In late January 2006, Defendants initiated retaliatory disciplinary actions against Plaintiff for possessing books in her room without authorization, despite the fact that a correctional officer told Plaintiff she could have these books.

31. On or about February 10, 2006, correctional officers under Defendant Ryan's control searched Plaintiff's room for additional legal work and materials. Those officers confiscated Plaintiff's notebooks and journals, which contained information related to her legal work.

32. Despite Plaintiff's repeated requests and grievances, Defendants refused to return Plaintiff's legal papers, refused to return the drafted Omnibus Civil Rights Complaint, and refused to permit Plaintiff to perform further legal work.

33. As a result of Defendants' actions, Plaintiff has been effectively prevented from performing legal work on the Omnibus Civil Rights Complaint.

34. Upon information and belief, Defendants intentionally placed Plaintiff in a restricted housing assignment where they could observe her and prevent her from preparing the legal work necessary to file the Omnibus Civil Rights Complaint.

35. Defendants' actions have caused and continue to cause Plaintiff severe emotional distress and serious physical injury, including daily fear, gastrointestinal disorders, severe headaches, weight loss, heart palpitations, insomnia, anxiety, and depression.

36. Defendants acted specifically to prevent and make it difficult, physically and emotionally, for Plaintiff to complete and file the Omnibus Civil Rights Complaint in this Court.

37. As a result of Defendants' actions to prevent her from conducting legal work, Plaintiff handwrote, by moonlight in her cell, the original Complaint and Motion for Preliminary Injunction filed in the instant case.

38. Because Plaintiff feared that WCI officials, including Defendants, would confiscate and destroy that original Complaint and Motion, Plaintiff arranged for a fellow inmate to transmit them to a relative, who filed them with this Court.

39. Defendants failed to investigate properly and/or cause to be investigated properly Plaintiff's allegations of retaliation and rights violations, despite being placed on notice by Plaintiff of the constitutional violations described above.

40. Defendants failed to supervise properly WCI personnel to prevent WCI personnel from retaliating against inmates, including Plaintiff, for seeking relief in this Court.

## COUNT I

**Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Violation of Plaintiff's Right of Access to the Courts as Protected by the First, Fifth, and Fourteenth Amendments to the U.S. Constitution**

41. Plaintiff hereby incorporates by reference the foregoing paragraphs of this First Amended Complaint.

42. The actions of Defendants as described herein, while acting under color of state and/or federal law, deprived Plaintiff of the securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including her right of access to the courts as guaranteed by the First, Fifth, and Fourteenth Amendments.

43. Defendants acted as described above intentionally, knowingly, recklessly, excessively, maliciously, and/or with reckless indifference or disregard of constitutionally protected rights.

44. Defendants' conduct violated clearly established rights belonging to Plaintiff, which rights reasonable persons in Defendants' position knew or should have known of.

45. As a direct and proximate result of Defendants' actions described above, Plaintiff has suffered not only deprivation of her constitutional rights, but also significant injuries, damages, and losses, for which she is entitled to redress.

## COUNT II

### Pursuant to 42 U.S.C. § 1983 for Declaratory Relief and Damages for Retaliation for Plaintiff's Exercise of Her Right of Access to the Courts

46. Plaintiff hereby incorporates by reference the foregoing paragraphs of this First Amended Complaint.

47. Plaintiff engaged in constitutionally protected activity, including the preparation of legal work to mount a constitutional challenge to policies and practices at WCI.

48. Plaintiff's constitutionally protected conduct was a substantial and motivating factor for Defendants' adverse actions against her.

49. Defendants' conduct caused injuries that would chill a person of ordinary firmness from continuing to engage in such constitutionally protected activity.

50. Defendants acted as described above under color of state law.

51. By their actions as alleged and described in this First Amended Complaint, in retaliating against Plaintiff and/or conspiring in and furthering such retaliation for her legal activities, Defendants violated Plaintiff's First and Fourteenth Amendment rights.

52. By failing to intervene, stop, and/or mitigate the harm suffered by Plaintiff as a result of the retaliatory adverse actions of Defendants O'Connor and Shotzberger, despite being placed on notice of the constitutional violations by Plaintiff's grievances and verbal complaints, Defendant Ryan evinced deliberate indifference toward and tacit authorization and ratification of

the retaliatory actions of Defendants O'Connor and Shotzberger against Plaintiff.

53. Defendants acted as described above intentionally, knowingly, recklessly, excessively, maliciously, and/or with reckless indifference or disregard of constitutionally protected rights.

54. Defendants' conduct violated clearly established rights belonging to Plaintiff, which rights reasonable persons in Defendants' position knew or should have know of.

55. As a direct and proximate result of Defendants' actions described above, Plaintiff has suffered not only deprivation of her constitutional rights, but also significant injuries, damages, and losses, for which she is entitled to redress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Terri Lee Meyer respectfully requests that this Court enter judgment in her favor and against the Defendants, and that this Court further:

a. declare that the acts set forth herein are in violation of Plaintiff's rights under the Constitution and laws of the United States;

b. order appropriate declaratory, injunctive and/or equitable relief, including appropriate orders directing return and access to all of Plaintiff's legal work, including electronic versions thereof; reinstatement of Plaintiff to her position in the WCI Law Library; access to the WCI Law Library; and related orders addressing prison policy and actions;

c. award Plaintiff compensatory and consequential damages, including damages for emotional distress, humiliation, and other pain and suffering on all claims allowed by law in an amount to be determined at trial, including but not limited to loss of liberty and economic loss, and all other difficulties, suffering and other hardships arising from Defendants' retaliatory

actions and deliberate indifference to Plaintiff's constitutional rights to be free from such retaliation;

 d. award Plaintiff economic losses on all claims allowed by law;

 e. award Plaintiff punitive damages on all claims allowed by law and in an amount to be determined at trial;

 f. award Plaintiff attorneys' fees, expenses and the costs associated with this action under 42 U.S.C. § 1988 and as otherwise allowed by law; and

 g. grant Plaintiff any other relief that this Court deems just and proper.

ACLU Foundation of Delaware

Dated: January 23, 2007 By: _____
Julia M. Graff, Esquire (No. 4708)
100 W. 10th Street, Suite 309
Wilmington, DE 19801
Phone: (302) 654-5326, ext. 103
Fax: (302) 654-3689

Christopher I. McCabe, Esquire, *Pro Hac Vice*
Liam Y. Braber, Esquire, *Pro Hac Vice*

JACOBY DONNER, P.C.
1515 Market Street, Suite 2000
Philadelphia, PA 19102
Phone: (215) 563-2400
Fax: (215) 563-2870

*Counsel for Plaintiff, Terri Lee Meyer*