## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TERRI LEE MEYER,                                    :
                    Plaintiff,          :    CIVIL ACTION
                                :
          vs.                              :    NO. 06-117-SLR
                                :
PATRICK RYAN, et al.,                          :    JURY TRIAL DEMANDED
                 Defendants.

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY, OVERRULE OBJECTIONS, OBTAIN LIMITED EXTRAORDINARY RELIEF, AND IMPOSE SANCTIONS

Dated: Sept. 14, 2007          By:    /s/ Drewry Fennell
                                Drewry Fennell, Esquire
                                ACLU Foundation of Delaware
                                100 W. 10th Street, Suite 309
                                Wilmington, DE 19801
                                Phone: (302) 654-5326, ext. 103
                                Fax: (302) 654-3689

                                /s/Liam Y. Braber
                                Christopher I. McCabe, Esquire
                                Liam Y. Braber, Esquire
                                JACOBY DONNER, P.C.
                                1700 Market Street, Suite 3100
                                Philadelphia, PA 19103
                                Phone: (215) 563-2400
                                Fax: (215) 563-2870

                                *Counsel for Plaintiff, Terri Lee Meyer*

<u>TABLE OF CONTENTS</u>

|  |  | Pages |
|---|---|---|
| TABLE OF CONTENTS |  | 2. |
| TABLE OF AUTHORITIES |  | 3. |
| I. | STATEMENT OF NATURE OF PROCEEDING | 4. |
| II. | SUMMARY OF ARGUMENT | 4. |
| III. | FACTS | 5. |
| IV. | ARGUMENT | 9. |
|  | A. Defendants Failed to Comply with Proper Electronic Discovery Requests that are Reasonably Calculated to Lead to Discoverable Evidence Produce Party Deponents | 9. |
|  | B. Defendants Failed to Comply with Document Requests. | 11. |
|  | C. Defendants' Interrogatory Responses Afford No Time For Review. | 12. |
|  | D. Plaintiff Should Be Granted Sanctions Against Defendants For Defendants' Discovery Omissions and Misleading Statements Necessitating This Motion. | 12. |
| V. | CONCLUSION AND RELIEF REQUESTED | 14. |

## <u>TABLE OF AUTHORITIES</u>

**STATUTES AND CODES**

42 U.S.C. §1982    …………………………………………………    3

**RULES  AND REGULATIONS**

37 Fed.R.Civ.P.    …………………………………………………..    passim.

33 Fed. R.Civ.P.    …………………………………………………..    12

26 Fed. R.Civ.P.    …………………………………………………..    9-11

## I.    STATEMENT OF NATURE AND STAGE OF PROCEEDING

This action is a First Amendment civil rights action, under 42 U.S.C. §1983 on behalf of Plaintiff Terri L. Meyer ("Meyer"), a Baylor Women's Correctional Institution ("BWCI") inmate.  Meyer alleges, <u>inter alia</u>, via her First Amended Complaint, that Defendant BWCI personnel violated her First Amendment right of access to the courts, through direct action, confiscation of legal documents, and retaliation.  Ms. Meyer's claims stem partly from her legal work related to preparation of an omnibus civil rights complaint on behalf of Meyer and other inmates challenging various conditions at BWCI.    Among many other relevant facts, Meyer worked as law library clerk and was terminated from that job on or about January 26, 2005, concurrent with a seizing of Meyer's legal preparation material by Defendants.  Much of the legal material was kept from Meyer until being returned many months later and some remains missing.  <u>See</u> First Amended Complaint.  Defendants are BWCI Warden Patrick Ryan, Treatment Services Supervisor Colleen Shotzberger, and Law Library supervisor/paralegal George O'Connor.  All defendants are employed by the State of Delaware, Department of Corrections.

The Discovery Deadline for this matter is September 14, 2007.

## II.    SUMMARY OF ARGUMENT

1.      Under Rule 37 of the Federal Rules of Civil Procedure this Court should compel Defendants to produce discovery to comply with Plaintiff's discovery requests, without objection, at the offices of Plaintiff's counsel, overrule improper objections, grant limited extraordinary relief regarding discovery recently served by Defendants, and impose sanctions against Defendants.

2.      Plaintiff's below described and attached Discovery Requests are plainly

calculated to lead to discoverable evidence and must be subject to discovery.

3.      Despite repeated efforts on the part of Plaintiff to secure the above discovery,

Plaintiff has not been able to acquire it by amicable means.


III.    FACTS

**Plaintiff's Electronic Discovery Requests**

On February 27, 2007, Plaintiff Meyer served her first request for electronic discovery

(and for compliance with this Court's standard E-Discovery policy), seeking law library

computer files related to Ms. Meyer.  See attached Request and Notice of Service, at Exhibit

"A."   In response and after much consultation between counsel and Defendants' electronic

document forensic analyst Stephen Bunting, Defendants produced electronic copies of

documents contained in a single law clerk computer for the law library.

Defendants, however, failed to disclose other computer files related to Ms. Meyer,

including those contained on the computers used by Defendants themselves.  Even the existence

of such computers was not disclosed, despite Defendants' standing duty and Plaintiff's specific

demand for information on all computer drives and on the computer system in general.  See

Exhibit "A."

On May 25, 2007, Plaintiff Meyer served Document Requests on Defendants, requesting,

inter alia, electronic documents related to Ms. Meyer since 2004, Meyer's employment as law

clerk, Meyer's legal action, Meyer's work on a previous civil rights complaint, and related

relevant documents,.   See Document Requests, Definition #5, Reqeusts ##1, 2, 3, 5, 6, 7, 10,,

attached at Exhibit "B."  Plaintiff Meyer's document requests specifically requested relevant

documents forensically reviewed or prepared, specifically including forensic analyst Stephen

Bunting.  See Request #10, at Exhibit "B."

By Response dated June 21, 2007, Defendants referred to a spreadsheet of electronic

files, which were ultimately discovered to have been taken, by forensic analyst Bunting, from the

single law clerk computer in the law library.  See Response ##1, 2, 3, 5, 6, 7, 10, at Exhibit "B."

Documents from that spreadsheet were later selected by Plaintiff's counsel and produced.

However, at deposition of law librarian/paralegal George O'Connor, on June 22, 2007,

Mr. O'Connor disclosed for the first time that the law library actually contained two (2)

computers, one that Mr. O'Connor uses and the law clerk's computer:

```
Q.    Are there computers in the law library?

A.    Presently there's one.

Q.    How many are there usually?  That's not a good
        question.  How many computers were there when you
      first arrived at the law library?

A.    Two.
                    ****
A.    Well, the computer I was using was for a
      purpose, to assist the inmates with their legal
      issues.  The computer that the inmate law clerk was
      using, my understanding was some type of computer
       course or something she was taking.  ***
```

(O'Connor, pp. 23, 27-28 at Exhibit "C").

Additionally, Plaintiff's counsel has learned additional computer files relating to and

referring to Ms. Meyer exist on the computers of Defendant O'Connor and Defendant

Shotzberger, but such electronic documents have not been produced in discovery with the rest of

the electronic files.  Seeking such documents, on July 10, 2007, Plaintiff's counsel reminded

Defendants to produce responsive electronic computer files from all Defendants' computers, and

attempted to secure the production of such documents.  <u>See</u> <u>Discovery Letter</u>, at Exhibit "D."

Further, in that letter, Plaintiff's counsel specifically requested written confirmation that all

Defendants' computers had been searched for responsive documents.  <u>See id.</u>  Defendants did not

comply with these requests.

To this date, despite numerous requests by counsel, Defendants have not produced other

electronic documents that exist on all the computers within the Defendants' control.

### Plainitff's Request for Production of Documents

On May 25, 2007, Plaintiff Meyer served Document Requests on Defendants, requesting,

at Requests 1, 2, 3, 5, 6 and 7, documents related to or referring to:  Ms. Meyer since 2004,

Meyer's employment as law clerk, Meyer's legal action, Meyer's work on a previous civil rights

complaint, and related relevant documents.  <u>See Requests ##1, 2, 3, 5, 6, 7</u>, at Exhibit "B."

By Response dated June 21, 2007, Defendants rely upon vague objections of overbreadth

and undue burden. <u>See Responses</u>, at Exhibit "B."  Several documents believed to exist have not

been produced – such as Monthly Reports prepared by Defendant O'Connor and submitted to

Defendant Shotzberger using Plaintiff Meyer's own law clerk reports.  Full and complete

answers to these document requests have not been forthcoming.

### Documents Requested At Deposition

On June 22, 2007, during the deposition of George O'Connor Plaintiff placed on

recorded and marked six (6) document requests, which counsel agreed to produce, including

documents concerning Ms. Meyer kept in O'Connor's office files, Meyer's employment or

personnel file, copies of documents allegedly "shredded" and others.  <u>See Deposition Doc.</u>

<u>Requests</u>, at Exhibit "E."  To date, no response to such requests has been forthcoming.

### Plaintiff's Interrogatories – First Set

On June 25, 2007, Plaintiff served its first set of Interrogatories.  See Exhibit "F."  After discussions regarding compliance and a confidentiality stipulation regarding Dept. of Corrections policies and procedures, Defendants served a response to such Interrogatories electronically on September 12, 2007 at 4:28pm, referencing and incorporating several documents to be provided, including policies and procedures, which as of September 13, 2007, have not yet arrived.  These interrogatories are not signed and/or verified by the Defendants themselves and thus violate the Federal Rules of Civil Procedure.    Accordingly, Plaintiff seeks the limited extraordinary relief of an extension of the September 14, 2007 discovery deadline only for the purposes of reviewing the responses and moving to compel full responses should Plaintiff deem necessary.

### Misleading Discovery Practices

Although Plaintiff does not fault Defendants' counsel, and some documents have been produced, it appears to Plaintiff that Defendants themselves are avoiding full compliance with discovery requests by attempting to obfuscate discovery and unnecessarily burden Plaintiff.  The omissions go beyond the above electronic documents discovery problem.

For instance, on June 21, 2007, in response to Plaintiff's request for identification of any relevant documents that have been destroyed, deleted, or lost (Doc. Req. 15), Defendants responded simply that "Defendants have no knowledge of destroyed, deleted, or lost documents."  See Response No. 15, at Exhibit "B."  The very next day, June 22, 2007, at deposition, Defendant O'Connor admitted that, in fact, he shredded two letters in which Plaintiff requested that her confiscated files be returned to her:

```
Q.   Do you retain or do you know of copies of the
     letters that you referred to, that you referred
     to regarding Ms. Meyer's request for documents
     back?

A.   What do you mean?  The letters she wrote to me?
```

```
Q.    Yes.

A.    Do I have them?

Q.    Do you have them?

A.    No, I don't.

Q.    What happened to those?

A.    I shred them as I do with all inmate
      communications.
```

(O'Connor, pp. 147-48, at Exhibit "E").

Plaintiff brought this to the attention of counsel to no avail.  See Exhibit "D."  Plaintiff

has incurred damages as a result of Defendants misleading practices and now seeks

reimbursement for the expense of filing the instant discovery motion.


## IV.    ARGUMENT

### A.    Defendants Failed to Comply with Proper Electronic Discovery Requests that are Reasonably Calculated to Lead to Discoverable Evidence Produce Party Deponents.

First, Defendants should be compelled to produce all electronic documents responsive to

Plaintiff's discovery requests, including those found in computers used by Defendants, and to

comply with this Court's standard e-discovery procedure.    Under Rule 26(b), Plaintiff is entitled

to discovery "regarding any matter not privileged that is relevant to the claim or defense or any

party, including the existence, description, nature, custody, condition, and location of any books,

document."  Additionally, the discovery need not be admissible if it is "reasonably calculated to

lead to the discovery of admissible evidence."  Fed.R.Civ.P. 26(b)(2).

Defendants failed to disclose electronic documents.  The Federal Rules of Civil

Procedure now specifically encompass electronic documents (e.g. Fed.R.Civ.P. 26 (a)(1)(B) and

(b)(2)), <u>and</u> the District of Delaware has incorporated "Standard" E-Discovery procedures to make sure that parties make available the sometimes easily-ignored world of electronic documents.  <u>See</u> Default Standard for E-Discovery, attached at Exhibit "A."  Under both these standards, Plaintiffs should have been made aware of computers and electronic documents, all within the Defendants' personal control every day, which contained relevant materials related to Ms. Meyer and her complaint.  Further, on February 27, 2007, Plaintiff specifically requested Defendants to disclose electronic documents and comply with the District of Delaware Standard E-Discovery Procedures <u>and</u> on May 25, 2007 included electronic documents in document requests.  <u>See</u> Exhibits "A" and "B."

Although through forensic computer analyst Stephen Bunting Defendants produced electronic documents contained on the single law clerk computer, Defendants failed to disclose the number of computers located in the law library and those used by Defendants (other than the one used by Meyer as law clerk).  <u>See id.</u>   More specifically, Defendants refused to disclose relevant and responsive documents contained on those computers.

At deposition of law librarian/paralegal George O'Connor, on June 22, 2007, Mr. O'Connor disclosed for the first time that the law library actually contained two (2) computers, one that Mr. O'Connor uses and the law clerk's computer.  (O'Connor, pp. 23, 27-28 at Exhibit "C").  Further, on or about July 5, 2007, Plaintiff's counsel learned additional computer files relating to and referring to Ms. Meyer exist on the computers of Defendant O'Connor and Defendant Shotzberger, but such electronic documents had not been produced in discovery with the rest of the electronic files.

Seeking such documents, on July 10, 2007, Plaintiff's local counsel reminded Defendants to produce responsive electronic computer files from <u>all</u> Defendants' computers, and attempted

to secure the production of such documents.  See Discovery Letter, at Exhibit "D."   No response

was forthcoming and no further electronic document disclosure has occurred to date.  Despite

numerous requests by counsel, Defendants have not produce other electronic documents that

exist on all the computers within the Defendants' control.

     **B.**     **Defendants Failed to Comply with Document Requests.**

     Defendants have refused to fully comply with Plaintiff's Requests for Production of

Documents, served both traditionally and at deposition of Defendant George O'Connor.

     First, on May 25, 2007, Plaintiff Meyer served Document Requests on Defendants,

requesting, at Requests 1, 2, 3, 5, 6 and 7, documents related to or referring to:  Ms. Meyer since

2004, Meyer's employment as law clerk, Meyer's legal action, Meyer's work on a previous civil

rights complaint, and related relevant documents.  See Requests ##1, 2, 3, 5, 6, 7, at Exhibit "B."

By Response dated June 21, 2007, Defendants rely upon vague objections of overbreadth and

undue burden. See Responses, at Exhibit "B."  Several documents believed to exist have not

been produced – such as Monthly Reports prepared by Defendant O'Connor and submitted to

Defendant Shotzberger using Plaintiff Meyer's own law clerk reports.  Defendant's objections

are improper, and Defendants should be compelled to comply in full and without further

objection to Plaintiff's Document Requests 1, 2, 3, 5, 6 and 7.

     Second, on June 22, 2007, during the deposition of George O'Connor Plaintiff placed on

record and marked six (6) document requests, which counsel agreed to produce, including

documents concerning Ms. Meyer kept in O'Connor's office files, Meyer's employment or

personnel file, copies of documents allegedly "shredded" and others.  See Deposition Doc.

Requests, at Exhibit "E."  To date, no response to such requests has been forthcoming.

Therefore, Defendants' objections to Plaintiff's discovery must be overruled, to the extent any were served in response, and Defendants should be compelled to produce documents and answers in compliance with Plaintiff's proper requests.

### C.     Defendants' Interrogatory Responses Afford No Time For Review.

Plaintiff should be given a short period to review and move to compel, if necessary, discovery response served on the eve of the discovery deadline (Sept. 14, 2007).  Plaintiff served Interrogatories-First Set on Defendants on June 25, 2007.  See Interrogatories and Notice of Service, at Exhibit "F."  After discussions regarding compliance and a confidentiality stipulation regarding Dept. of Corrections policies and procedures, Defendants served a response to such Interrogatories electronically on September 12, 2007 at 4:28pm, referencing and incorporating several documents to be provided, including policies and procedures, which as of September 13, 2007, have not yet arrived.  These interrogatories are not signed and/or verified by the Defendants themselves and thus violate the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 33(b).  Accordingly, Plaintiff should be granted the limited extraordinary relief of an extension of the September 14, 2007 discovery deadline only for the purposes of reviewing the responses and moving to compel full responses should Plaintiff deem necessary.

### D.     Plaintiff Should Be Granted Sanctions Against Defendants For Defendants' Discovery Omissions and Misleading Statements Necessitating This Motion.

Rule 37(a)(4) contemplates awarding expenses, including attorneys fees, to a discovery dispute movant.  Fed.R.Civ.P. 37(a)(4).  Rule 37(c) contemplates more serious sanctions for misleading discovery answers.  Fed.R.Civ.P. 37(c).  Here, compelling reasons justify awarding sanctions.  Defendants attempt to obfuscate discovery and unnecessarily burden Plaintiff.

For instance, on June 21, 2007, in response to Plaintiff's request for identification of any relevant documents that have been destroyed, deleted, or lost (Doc. Req. 15), Defendants responded simply that "Defendants have no knowledge of destroyed, deleted, or lost documents." See Response No. 15, at Exhibit "B." The very next day, June 22, 2007, at deposition, Defendant O'Connor admitted that, in fact, he shredded two letters in which Plaintiff requested that her confiscated legal files be returned to her:

```
Q.    Do you retain or do you know of copies of the
      letters that you referred to, that you referred
      to regarding Ms. Meyer's request for documents
      back?

A.    What do you mean?  The letters she wrote to me?

Q.    Yes.

A.    Do I have them?

Q.    Do you have them?

A.    No, I don't.

Q.    What happened to those?

A.    I shred them as I do with all inmate
      communications.
```

(O'Connor, pp. 147-48, at Exhibit "E").

The difference between the Document Request Response #15 and reality is marked, indicating that Defendants do not supply full and complete answers for paper discovery responses and mislead Plaintiff. See Exhibit "B." Plaintiff brought this to the attention of counsel to no avail. See Exhibit "D." This discovery exchange goes to the very heart of the issues at stake in this civil rights action. Plaintiff alleges that legal preparation materials were taken and kept from her, and she alleges that she tried desperately to get them back from Defendants. When Plaintiff is misled about the destruction and whereabouts of letters that

document those very efforts, Plaintiff loses ability to obtain the facts most critical to her case. Justice can hardly be served under such circumstances.

Accordingly, Plaintiff should be awarded $1,000.00 in counsel fees for the expense of requiring this motion in order to correct plainly deficient discovery practices by Defendants.

## V.     CONCLUSION AND RELIEF REQUESTED

Based upon the foregoing, Plaintiff Terri L. Meyer respectfully requests an Order that: 1) Defendants' discovery objections are overruled;  2)  Defendants shall, without further objection, within ten (10) days of this Order:  a) Produce and serve on Plaintiff's counsel any and all responsive electronic computer files from any and all computers within Defendants' control, comply in full with Plaintiff's electronic discovery requests, and comply with this Court's standard e-discovery procedure; and, b) Produce and serve on Plaintiff's counsel any and all documents responsive to Plaintiff's Document Requests 1, 2, 3, 5, 6, 7 and 15; and, c) Produce and serve on Plaintiff's counsel any and all documents responsive to the six (6) document requests marked during the June 22, 2007 deposition of George O'Connor, including documents related or referring to Meyer kept in O'Connor's office files, Meyer's employment or personnel file, and copies or detailed descriptions of documents allegedly "shredded"; and, 3) Defendants are granted the extraordinary relief of an extension of the September 14, 2007 discovery deadline until October 1, 2007, only for the purposes of reviewing Defendants' responses to Interrogatories and moving to compel full responses should Plaintiff deem necessary; and, 4) $1,000.00 in counsel fees are awarded in favor of Plaintiffs and against Defendants, to be paid within thirty (30) days of this Order;

as set forth in the attached proposed form of Order.

14

Respectfully Submitted,

Dated: <u>Sept. 14, 2007</u>        By:    <u>/s/ Drewry Fennell</u>
Drewry Fennell, Esquire
ACLU Foundation of Delaware
100 W. 10th Street, Suite 309
Wilmington, DE 19801
Phone: (302) 654-5326, ext. 103
Fax: (302) 654-3689

<u>/s/Liam Y. Braber</u>
Christopher I. McCabe, Esquire
Liam Y. Braber, Esquire
JACOBY DONNER, P.C.
1700 Market Street, Suite 3100
Philadelphia, PA 19103
Phone: (215) 563-2400
Fax: (215) 563-2870

*Counsel for Plaintiff, Terri Lee Meyer*

EXHIBIT "A"



## JACOBY DONNER P.C.
### ATTORNEYS AT LAW

Liam Braber, Esquire
lbraber@jacobydonner.com

February 27, 2007

*Philadelphia*

1700 Market Street

Suite 3100

Philadelphia, PA 19103

215.563.2400

Fax: 215.563.2870

Ophelia Waters, Esquire
State of Delaware Attorney General
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801

Re:    Meyers v. Ryan, et al.
      <u>C.A. No. 06-117-SLR</u>

Dear Ophelia:

*New Jersey*

East Gate Center

309 Fellowship Road

Suite 200

Mt. Laurel, NJ 08054

609.278.2500

Fax: 609.278.0505

    As discussed before, Ms. Meyer had many legal files stored in the computer system in the law library, going back some time (we are looking for files from 2002 through 2006). These files were on computer drives apparently.

    We had requested that Defendants' Rule 26 disclosures address the existence and location of such files, but since the disclosures did not do so, we now request such electronic files to be produced in their original electronic format.

    Additionally, I need to understand the computer set up and system in the law library. Please forward the disclosures required by the Dist. of DE electronic discovery default plan - a copy of which is attached. In accord with the attached, please include the current custodian(s) of electronic legal files, a list of each electronic system with a general description of the nature of such system, a description of e-document retention policies in the law library, the individual(s) responsible for such policies, and any problems reasonably anticipated.

*Virginia*

355 Crawford Street

Suite 200

Portsmouth, VA 23704

757.337.8768

Fax: 757.337.8769

    You may consider this letter a formal document request and a Notice of Service will be filed accordingly. Thanks for your time and attention to this matter.

Very truly yours,

Liam Braber
For JACOBY DONNER, P.C.

www.jacobydonner.com

LB:jl

cc:   Julia Graff, Esq.
     Terri Meyer



## DEFAULT STANDARD FOR DISCOVERY OF
## ELECTRONIC DOCUMENTS ("E-DISCOVERY")

1. **Introduction.** It is expected that parties to a case will cooperatively reach agreement on how to conduct e-discovery. In the event that such agreement has not been reached by the Fed. R. Civ. P. 16 scheduling conference, however, the following default standards **shall apply** until such time, if ever, the parties conduct e-discovery on a consensual basis.

2. **Discovery conference.** Parties shall discuss the parameters of their anticipated e-discovery at the Fed. R. Civ. P. 26(f) conference, as well as at the Fed. R. Civ. P. 16 scheduling conference with the court, consistent with the concerns outlined below. More specifically, prior to the Rule 26(f) conference, the parties shall exchange the following information:

- A list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities (see ¶ 6).

- A list of each relevant electronic system that has been in place at all relevant times[1] and a general description of each system, including the nature, scope, character, organization, and formats employed in each system. The parties

---

[1]For instance, in a patent case, the relevant times for a patent holder may be the date the patent(s) issued or the effective filing date of each patent in suit.

should also include other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility. Electronic documents of limited accessibility may include those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.

- The name of the individual responsible for that party's electronic document retention policies ("the retention coordinator"), as well as a general description of the party's electronic document retention policies for the systems identified above (see ¶ 6).

- The name of the individual who shall serve as that party's "e-discovery liaison" (see ¶ 2).

- Provide notice of any problems reasonably anticipated to arise in connection with e-discovery.

To the extent that the state of the pleadings does not permit a meaningful discussion of the above by the time of the Rule 26(f) conference, the parties shall either agree on a date by which this information will be mutually exchanged or submit the issue for resolution by the court at the Rule 16 scheduling conference.

3. **E-discovery liaison.** In order to promote communication and cooperation between the parties, each party to a case shall designate a single individual through which all e-discovery

2

requests and responses are made ("the e-discovery liaison").
Regardless of whether the e-discovery liaison is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, he or she must be:

- Familiar with the party's electronic systems and capabilities in order to explain these systems and answer relevant questions.

- Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues.

- Prepared to participate in e-discovery dispute resolutions.

The court notes that, at all times, the attorneys of record shall be responsible for compliance with e-discovery requests. However, the e-discovery liaisons shall be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process.

4. **Timing of e-discovery.** Discovery of electronic documents shall proceed in a sequenced fashion.

- After receiving requests for document production, the parties shall search their documents, other than those identified as limited accessibility electronic documents, and produce responsive electronic documents in accordance with Fed.

3

R. Civ. P. 26(b)(2).

    &bull; Electronic searches of documents identified as of limited accessibility shall not be conducted until the initial electronic document search has been completed.  Requests for information expected to be found in limited accessibility documents must be narrowly focused with some basis in fact supporting the request.

    &bull; On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

    5.  **Search methodology.**  If the parties intend to employ an electronic search to locate relevant electronic documents, the parties shall disclose any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the electronic documents.  The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems.  The parties also shall reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery.  To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g., time frames,

fields, document types).

6. **Format.**  If, during the course of the Rule 26(f) conference, the parties cannot agree to the format for document production, electronic documents shall be produced to the requesting party as image files (e.g., PDF or TIFF).  When the image file is produced, the producing party must preserve the integrity of the electronic document's contents, i.e., the original formatting of the document, its metadata and, where applicable, its revision history.  After initial production in image file format is complete, a party must demonstrate particularized need for production of electronic documents in their native format.

7. **Retention.**  Within the first thirty (30) days of discovery, the parties should work towards an agreement (akin to the standard protective order) that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronic documents.  In order to avoid later accusations of spoliation, a Fed. R. Civ. P. 30(b)(6) deposition of each party's  retention coordinator may be appropriate.

The retention coordinators shall:

- Take steps to ensure that e-mail of identified custodians shall not be permanently deleted in the ordinary course of business and that electronic documents maintained by the individual custodians shall not be altered.

5

- Provide notice as to the criteria used for spam and/or virus filtering of e-mail and attachments; e-mails and attachments filtered out by such systems shall be deemed non-responsive so long as the criteria underlying the filtering are reasonable.

Within seven (7) days of identifying the relevant document custodians, the retention coordinators shall implement the above procedures and each party's counsel shall file a statement of compliance as such with the court.

8. **Privilege.** Electronic documents that contain privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production within thirty (30) days of such.

9. **Costs.** Generally, the costs of discovery shall be borne by each party. However, the court will apportion the costs of electronic discovery upon a showing of good cause.

10. **Discovery disputes and trial presentation.** At this time, discovery disputes shall be resolved and trial presentations shall be conducted consistent with each individual judge's guidelines.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TERRI LEE MEYER,                    :
                    *Plaintiff,*    :
                                    :
    vs.                             :
                                    :
PATRICK RYAN, Warden, Delores J. Baylor Women's  :    NO. 06-117-SLR
Correctional Institution, COLLEEN SHOTZBERGER,   :
Treatment Services Administrator, and GEORGE     :
O'CONNOR, Law Librarian, in their individual and :
official capacities,                             :
                    *Defendants.*   :

## NOTICE OF SERVICE

The undersigned certifies that on February 27, 2007, counsel for Plaintiff Terri L. Meyer caused the Plaintiff's First Document Request for Electronic Discovery to be delivered to counsel for Defendants, by first class mail, postage prepaid, as follows:

Ophelia M. Waters, Esquire
Deputy Attorney General
State of Delaware Dept. of Justice
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, DE 19801

Julia M. Graff, Esquire (No. 4708)
ACLU of Delaware
100 W. 10th Street, Suite 309
Wilmington, DE 19801
Phone: (302) 654-5326, ext. 103
Fax: (302) 654-3689

/s/ Liam Y. Braber
Christopher I. McCabe, Esq.
Liam Y. Braber, Esq.
JACOBY DONNER PC
1700 Market St., Ste. 3100
Philadelphia, PA 19103
Ph. (215) 563-2400
Fax. (215) 563-2870

*Counsel for Plaintiff, Terri L. Meyer*

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2007, the Plaintiff's First Document Request

for Electronic Discovery were sent by U.S. mail to Ophelia M. Waters, Esquire.

**AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF DELAWARE**

_____
Julia M. Graff (#4798)
Staff Attorney
100 West 10th St., Suite 309
Wilmington, DE 19801
jgraff@acludelaware.org

March 1, 2007

# EXHIBIT "B"

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TERRI LEE MEYER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| vs. | : | NO. 06-117-SLR |
| | : | |
| PATRICK RYAN, et al., | : | JURY TRIAL DEMANDED |
| Defendants. | | |

**REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS**
**DIRECTED TO DEFENDANTS – FIRST SET**

TO:    Defendants Ryan, O'Connor, and Shotzberger
       c/o  Ophelia M. Waters, Esq.
       Deputy Attorney General
       Delaware Dept. of Justice
       Carvel State Office Building
       820 North French Street, 6th Floor
       Wilmington, DE 19801

**INSTRUCTIONS AND NOTICES**

**PLEASE TAKE NOTICE** that you are requested to produce the documents described

herein, in accord with the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that if you contend that you are entitled to

withhold from production any documents identified herein on the basis of attorney-client

privilege, the work product doctrine, or other ground, then please:

(a)    Describe and identify the nature of each and every withheld document (e.g., letter, spreadsheet, or memorandum);

(b)    State the date of the document;

(c)    Identify the persons who sent and received the original and a copy of the document;

(d)    State the subject matter of the document; and

(e)     State the basis upon which you contend you are entitled to withhold the document from production.

**PLEASE TAKE FURTHER NOTICE** that you are under a continuing obligation to supplement your response to this Document Request.

**PLEASE TAKE FURTHER NOTICE** that if any document herein requested was formerly in your possession, custody or control and has been lost, deleted or destroyed, you are requested to submit in lieu of each document a written statement that such loss or destruction has occurred and which:

1.     Describes the nature of the document;

2.     Identifies the person who prepared or authored the document and, if applicable, the person to whom the document was sent;

3.     Identifies, as close as possible, the date(s) on which the document was prepared;

4.     Identifies, as close as possible, the date(s) on which the document was lost, deleted or destroyed;

5.     Describes the conditions of or reasons for such loss or destruction and the persons requesting and performing the destruction.

**IN ANSWERING THIS DISCOVERY,** please indicate in an appropriate manner the numbered request for which each document is being produced.

**IN ANSWERING THIS DISCOVERY,** the past tense includes the present, and vice versa. The masculine gender includes the feminine, and vice versa.

**IN ANSWERING THIS DISCOVERY,** if you assert any privilege with respect to any document concerning which a request is made herein, you are requested to segregate such documents

from your general files, to identify such document(s) in accordance with the Rules of Civil Procedure,

and to identify the nature of the privilege asserted as the ground for withholding production thereof.

## **DEFINITIONS**

1.     "Defendant(s)", "you" and "your" are used herein to refer to Defendants Ryan, O'Connor, and Shotzberger collectively (or any one Defendant if a Defendant has information that the others do not have), and their officers, directors, agents, representatives, employees, partners, attorneys, owned or subsidiary entities, and those under their direction or control.

2.     "Plaintiff" or "Meyer" shall refer to Plaintiff Terri L. Meyer, her agents, representatives, employees, attorneys, and those under her direction or control.

3.     The "Incident(s)" shall refer to any and all events, facts and circumstances referred to in the First Amended Complaint, including but not limited to confiscation of legal materials and related events.

4.     "Entity" or "person" is used herein to refer to any natural person and his agents and representatives and to any organization and its officers, directors, agents, representatives and employees.

5.     The word "document" or "documents" is used in its customary broad sense, in accord with the Rules of Civil Procedure, and includes all written, typed, printed, recorded or graphic statements, communications or other matter, however produced or reproduced, including, without limitation, all writings; leases; drafts; memos; checks; payments; analyses; reports; agreements; contracts; communications; letters or other correspondence; faxes; messages; telegrams; telexes; telegrams; cables; e-mail; cd-rom data; Internet websites; data stored on Internet websites; Internet webpages; data stored on servers or on web-storage sites; data stored on computer memory of any kind; memoranda; records; notes; summaries; interoffice communications; bulletins; meeting minutes; circulars; procedure pamphlets; photographs; studies; notices; invoices; diagrams; plans; drawings; diaries; charts; schedules; job reports; change orders; sound recordings or transcripts of personal or telephone conversations; correspondence; memoranda; telephone logs;  demands for payment; requests for indemnification; requests for information; and any other document, writing or other data compilation of any kind, including but not limited to any information contained in any computer, although not yet printed out or in the memory units containing such data from which information can be obtained or translated into reasonable usable form, and all drafts and non-identical copies of the foregoing as well as any other tangible thing which constitutes or contains matter within the proper scope of Discovery which are in your possession, custody and control.

## DOCUMENTS AND THINGS REQUESTED

1.      Any and all documents related or referring to Meyer, including all documents related to or comprising any communication, note, memoranda, correspondence, grievance, disciplinary action, dealing, agreement, contract, or application related to Meyer, from January 1, 2004 to present.

2.      Any and all documents related or referring to Meyer's employment as clerk in the WCI Law Library.

3.      Any and all documents related to, referring to, or comprising Meyer's preparations for a legal action, including work on the Omnibus Civil Rights Complaint (as referred to in Meyer's First Amended Complaint, ¶¶ 14.-18.).

4.      Any and all documents related to or supporting your denials and/or other contentions contained in your Answer to the First Amended Complaint.

5.      Any and all documents referring to, related to or comprising the Omnibus Civil Rights Complaint (as defined above), including memoranda, notes, drafts, and correspondence, whether official or unofficial, whether formal or informal.

6.      Any and all documents referring to or related to the Incident(s) averred in the First Amended Complaint, including memoranda, notes, drafts, and correspondence, whether official or unofficial, whether formal or informal, from January 1, 2004 to present.

7.      Any and all documents referring to or related to any complaint, objection, protest, dissatisfaction, or grievance by Meyer, including memoranda, notes, drafts, and correspondence, whether official or unofficial, whether formal or informal, from January 1, 2004 to present.

8.      Any and all documents relating to, supporting or relied upon by you in preparing your Answer and Affirmative Defenses.

9.      Any and All documents identified in, relating to, or supporting your answers to any and all Interrogatories Directed to Defendants in the above-captioned matter.

10.     Any and all documents produced, created, sent, and/or reviewed in your forensic review of any information related to this matter, including the spreadsheet referred to in your "Preliminary Computer Forensics Report" dated 03/23/2007, the documents referred to in your "Preliminary Computer Forensics Report" dated 03/23/2007, any related documents by Stephen Bunting, and any related notes, memoranda, charts, or drafts.

11.     Any and all Statements concerning this action, from all witnesses or potential witnesses, including any statements from the parties herein or their respective agents, servants, or employees.

12.     Regarding any and all expert witness(es) who will testify on your behalf in this matter, any and all resumes, curriculum vitae, authorships, list of matters in which the expert previously testified, and expert reports, in accord with the Federal Rules of Civil Procedure.

13.     Any and all documents reviewed by, relied upon by, and/or created by your expert witness(es) in preparation of any expert reports, including drafts.

14.     Any and all documents that you or your counsel intends to use at trial or any hearing in this matter.

15.     Any and all reports, logs, summaries or other document that identifies any and all documents otherwise responsive to this request, but which have been destroyed, deleted or lost (see above notices and instructions that you identify destroyed or deleted documents and record the circumstances surrounding their destruction – such record may be by log or summary report).  If any such destroyed, deleted or lost documents existed in electronic media, provide the electronic media from which the documents were destroyed.

Dated: _5/25/07_                          /s/ Julia M. Graff _____
                                          Julia M. Graff, Esquire (No. 4708)
                                          ACLU of Delaware
                                          100 W. 10th Street, Suite 309
                                          Wilmington, DE 19801
                                          Phone: (302) 654-5326, ext. 103
                                          Fax: (302) 654-3689

                                          /s/Liam Y. Braber _____
                                          Christopher I. McCabe, Esq.
                                          Liam Y. Braber, Esq.
                                          JACOBY DONNER PC
                                          1700 Market St., Ste. 3100
                                          Philadelphia, PA 19103
                                          Ph. (215) 563-2400
                                          Fax. (215) 563-2870

                                          *Counsel for Plaintiff, Terri L. Meyer*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TERRI LEE MEYER, | : | |
| Plaintiff, | : | |
| | : | No. 06-117-SLR |
| v. | : | |
| | : | CIVIL ACTION |
| PATRICK RYAN, COLLEEN | : | |
| SHOTZBERGER, and GEORGE | : | |
| O'CONNER, | : | |
| Defendants. | : | |

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the attached executed Requests for Documents and Things Directed to Defendant – First Set, to be served by first class mail and electronically, as appropriate, on all parties or counsel as follows:

Ophelia M. Waters, Esq.
Deputy Attorney General
Delaware Department of Justice

Dated: 5/25/07

/s/ Julia M. Graff
Julia M. Graff, Esquire (No. 4708)
ACLU of Delaware
100 W. 10th Street, Suite 309
Wilmington, DE 19801
Phone: (302) 654-5326, ext. 103
Fax: (302) 654-3689

/s/Liam Y. Braber
Christopher I. McCabe, Esq.
Liam Y. Braber, Esq.
JACOBY DONNER PC
1700 Market St., Ste. 3100
Philadelphia, PA 19103
Ph. (215) 563-2400
Fax: (215) 563-2870

*Counsel for Plaintiff, Terri L. Meyer*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TERRI LEE MEYER, | : | |
| Plaintiff, | : | |
| | : | No. 06-117-SLR |
| v. | : | |
| | : | CIVIL ACTION |
| PATRICK RYAN, COLLEEN | : | |
| SHOTZBERGER, and GEORGE | : | |
| O'CONNER, | : | |
| Defendants. | : | |

### NOTICE OF SERVICE

The undersigned certifies that on May 25, 2007, the Plaintiff's Requests for

Documents and Things Directed to Defendant – First Set, were delivered to the following

person in the form and manner indicated:

**One copy by first class mail, postage prepaid, to:**

Ophelia Waters, Esq.
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

**ACLU FOUNDATION
OF DELAWARE**

/s/ Julia M. Graff
Julia M. Graff, I.D. # 4708
100 W. 10th Street, Suite 309
Wilmington, DE 19801
jgraff@acludelaware.org

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

TERRI LEE MEYER,       )
                        )
        Plaintiff,     )
                        )
        v.            )     C.A. No. 06-117-SLR
                        )
GEORGE O'CONNOR, et al.   )
                        )
                        )
        Defendants.   )

## DEFENDANTS' RESPONSE TO PLAINTTIF'S REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS

To:    Julia M. Graff, Esquire (Atty. No.: 4708)
       ACLU of Delaware
       100 West 10th Street, Suite 309
       Wilmington, DE  19801

       Christopher I. McCabe, Esquire
       Liam Y. Braber, Esquire
       Jacoby Donner PC
       1700 Market Street, Suite 3100
       Philadelphia, PA  19103

## RESPONSES TO REQUESTS FOR PRODUCTION

      Pursuant to Rule 34 of the Federal Rules of Civil Procedure, defendants Warden Patrick Ryan, Treatment Services Supervisor Colleen Shotzberger and Officer George O'Connor ("State Defendants") hereby respond to Plaintiff's First Requests for Production of Documents (the "Discovery Requests") as follows:

## GENERAL OBJECTIONS

      The following general objections apply to and are hereby incorporated by reference into each individual response herein, whether or not expressly incorporated by

reference in such individual response:

1.      Defendants object to the Discovery Requests to the extent that they seek to obtain information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other applicable protections or privileges.

2.      Defendants object to the Discovery Requests to the extent that they seek information not in Defendants' possession, custody or control on the ground that any such request exceeds the obligations imposed by the Federal Rules of Civil Procedure.

3.      Defendants object to the Discovery Requests to the extent that they seek information that is already in the possession, custody or control of Plaintiff or information that is equally available to Plaintiff.

4.      Defendants object to the Discovery Requests to the extent they purport to require Defendants to produce documents at the offices of Plaintiff's attorneys.

5.      Defendants object to the Discovery Requests to the extent that they seek to impose requirements not otherwise required by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware.

6.      Defendants object to the Discovery Requests to the extent that they are vague, ambiguous, or otherwise incomprehensible.

7.      Defendants object to the Discovery Requests to the extent that they are overly broad, unduly burdensome, or seek information that is neither relevant to the issues raised in the Complaint (the "Complaint"), nor reasonably calculated to lead to the discovery of admissible evidence.

8.    In providing responses to these Discovery Requests, Defendants do not waive, and expressly reserve, all objections as to competency, relevancy, materiality and admissibility thereof, as well as all objections to any other discovery request.

9.    Defendants' assertion that they will produce documents in response to a particular request is not to be construed as an admission that any document exists within any requested category or categories, but solely as an assertion that Defendants will make available for inspection and copying responsive, non-privileged documents within its possession, custody or control should any such documents be located after a reasonably diligent search.

10.    Pursuant to the applicable provisions of the Federal Rules of Civil Procedure, Defendants reserve the right to supplement or amend these responses and assert additional objections as they complete their review and analysis in response to the Discovery Requests.

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

**PRODUCTION REQUEST NO. 1:**    Any and all documents related or referring to Meyer, including all documents related to or comprising any communication, note, memoranda, correspondence, grievance, disciplinary action, dealing, agreement, contract, or application related to Meyer, from January 1, 2004 to present.

**RESPONSE:**

Defendants incorporate by reference the foregoing General Objections and further objects to this request on grounds that it is overly broad and unduly burdensome. Subject to and without waiver of the foregoing general and specific objections,

Defendants have produced documents Bates stamped 0001 through 1494 in response to this Request.

**PRODUCTION REQUEST NO. 2:**    Any and all documents related to or referring to Meyer's employment as clerk in the WCI Law Library.

**RESPONSE:**

Subject to and without waiver of the foregoing general and specific objections, Defendants have produced documents Bates stamped 0001 through 1494 in response to this Request.

**PRODUCTION REQUEST NO. 3:**    Any and all documents related to, referring to, or comprising Meyer's preparations for a legal action, including work on the Omnibus Civil Rights Complaint (as referred to in Meyer's First Amended Complaint ¶¶ 14 – 18).

**RESPONSE:**

Defendants incorporate by reference the foregoing General Objections and further object to this request on grounds that it is overly broad and unduly burdensome. By way of further objection, Plaintiff seeks information that is already in her possession, custody or control. Defendants are not in possession or control of documents comprising Meyer's preparation for legal action, including work on the "Omnibus Civil Rights Complaint." Subject to and without waiver of the foregoing general and specific objections, Defendants have produced documents Bates stamped 0001 through 1494 in response to this Request.

**PRODUCTION REQUEST NO. 4:**        Any and all documents

related to or supporting your denials and/or other contentions contained in your Answer

to the First Amended Complaint.

**RESPONSE:**

Defendants incorporate by reference the foregoing General Objections and

further object to this request on grounds that it is overly broad and unduly burdensome.

Subject to and without waiver of the foregoing general and specific objections,

Defendants have produced documents Bates stamped 0001 through 1494 in response to

this Request.

**PRODUCTION RESPONSE NO. 5:**        Any and all documents

referring to, related to or comprising the Omnibus Civil Rights Complaint (as defined

above), including memoranda, notes, drafts, and correspondence, whether official or

unofficial, whether formal or informal.

**RESPONSE:**

Defendants incorporate by reference the foregoing General Objections and

further object to this request on grounds that it is overly broad and unduly burdensome.

By way of further objection, Defendants are not in possession or control of documents

comprising Meyer's preparation for legal action, including work on the "Omnibus Civil

Rights Complaint." Subject to and without waiver of the foregoing general and specific

objections, Defendants have produced documents Bates stamped 0001 through 1494 in

response to this Request.


## PRODUCTION REQUEST NO. 6:    Any and all documents

referring to or related to the Incident(s) averred in the First Amended Complaint,

including memoranda, notes, drafts, and correspondence, whether official or unofficial,

whether formal or informal, from January 1, 2004 to present.

### RESPONSE:

Defendants incorporate by reference the foregoing General Objections and

further objects to this request on grounds that it is overly broad and unduly burdensome.

Subject to and without waiver of the foregoing general and specific objections,

Defendants have produced documents Bates stamped 0001 through 1494 in response to

this Request.


## PRODUCTION REQUEST NO. 7:    Any and all documents

referring to or related to any complaint, objection, protest, dissatisfaction, or grievance by

Meyer, including memoranda, notes, drafts, and correspondence, whether official or

unofficial, whether formal or informal, from January 1, 2004 to present.

### RESPONSE:

Subject to and without waiver of the foregoing general and specific

objections, Defendants have produced documents Bates stamped 0001 through 1494 in

response to this Request.

**PRODUCTION REQUEST NO. 8:**     Any and all documents

relating to, supporting or relied upon by you in preparing your Answer and

Affirmative Defenses.

**RESPONSE:**

Subject to and without waiver of the foregoing general and specific

objections, Defendants have produced documents Bates stamped 0001 through 1494 in

response to this Request.

**PRODUCTION REQUEST NO. 9:**     Any and All documents

identified in, relating to, or supporting your answers to any and all Interrogatories

Directed to Defendants in the above-captioned matter.

**RESPONSE:**

Subject to and without waiver of the foregoing general and specific

objections, Defendants have produced documents Bates stamped 0001 through 1494 in

response to this Request.

**PRODUCTION REQUEST NO. 10:**     Any and all documents

produced, created, sent, and/or reviewed in your forensic review of any information

related to this matter, including the spreadsheet referred to in your "Preliminary

Computer Forensics Report" dated 3/23/07, the documents referred to in your

"Preliminary Computer Forensics Report" dated 3/23/07, any related documents by

Stephen Bunting, and any related notes, memoranda, charts, or drafts.

> **RESPONSE:**

> Defendants incorporate by reference the foregoing General Objections and

further object to this request on grounds that it is overly broad and unduly burdensome.

Subject to and without waiver of the foregoing general and specific objections,

Defendants have identified and provided a spreadsheet for document inspection of

electronically stored information to be produced in response to this Request.

> **PRODUCTION REQUEST NO. 11:**    Any and all Statements

concerning this action, from all witnesses or potential witnesses, including any statements

from the parties herein or their respective agents, servants, or employees.

> **RESPONSE:**

> Defendants object to the Discovery Requests to the extent that they seek to

obtain information protected from disclosure by the attorney-client privilege, the attorney

work product doctrine, or any other applicable protections or privileges. Subject to and

without waiver of the foregoing general and specific objections, Defendants have

produced documents Bates stamped 0001 through 1494 in response to this Request.

**PRODUCTION REQUEST NO. 12:**    Regarding any and all expert witness(es) who will testify on your behalf in this matter, any and all resumes, curriculum vitae, authorships, list of matters in which the expert previously testified, and expert reports, in accord with the Federal Rules of Civil Procedure.

**RESPONSE:**

Defendants object to the Discovery Requests to the extent that they seek to impose requirements not otherwise required by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware.

**PRODUCTION REQUEST NO. 13:**    Any and all documents reviewed by, relied upon by, and/or created by your expert witness(es) in preparation of any expert reports, including drafts.

**RESPONSE:**

Defendants object to the Discovery Requests to the extent that they seek to impose requirements not otherwise required by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware.

**PRODUCTION RESPONSE NO. 14:**    Any and all documents that you or your counsel intends to use at trial or any hearing in this matter.

**RESPONSE:**

Defendants object to the Discovery Requests to the extent that they seek to impose requirements not otherwise required by the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of Delaware. Defendants will supplement their responses as required by the Federal Rules of Civil Procedure.

**PRODUCTION RESPONSE NO. 15:**    Any and all reports, logs, summaries or other document that identifies any and all documents otherwise responsive to this request, but which have been destroyed, deleted or lost (see above notices and instructions that you identify destroyed or deleted documents and record the circumstances surrounding their destruction – such record may be by log or summary report). If any such destroyed, deleted or lost documents existed in electronic media, provide the electronic media from which the documents were destroyed.

**RESPONSE:**

Defendants have no knowledge of destroyed, deleted or lost documents.

Dated: June 21, 2007

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**


____/s/ Ophelia M. Waters_____
Ophelia M. Waters, (Atty. I.D.# 3879)
Deputy Attorney General

Carvel State Building
820 North French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400

Counsel for State Defendants

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

TERRI LEE MEYER,    )
            )
   Plaintiff,    )
            )
   v.       )  C.A. No. 06-117-SLR
            )
            )
GEORGE O'CONNER, et al.,  )
            )
   Defendants.   )

## NOTICE OF SERVICE

The undersigned certifies that on June 21, 2007, she caused the *State Defendants'*

*Response to Plaintiff's Request for Production of Documents and Things* to be delivered

to the following person(s) in the form and manner indicated:

**Two copies by first class mail, postage prepaid, to each recipient:**

Julia M. Graff, Esquire
ACLU of Delaware
100 West 10th Street, Suite 309
Wilmington, DE 19801

Liam Y. Braber, Esquire
Christopher I. McCabe, Esquire
Jacoby Donner, P.C.
1700 Market Street, Suite 3100
Philadelphia, PA 19103

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

_____/s/ Ophelia M. Waters_____
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
Carvel State Building
820 N. French Street, 6th floor
Wilmington, DE 19801
Ophelia.Waters@state.de.us

## CERTIFICATE OF SERVICE

I hereby certify that on  June 21, 2007, I have mailed by United States Postal Service, the *State Defendants' Response to Plaintiff's Request for Production of Documents and Things* to the following: Julia M. Graff, Esquire and Liam Y. Braber, Esquire.

**STATE OF DELAWARE
DEPARTMENT OF JUSTICE**

/s/ Ophelia M. Waters
Ophelia M. Waters, I.D. #3879
Deputy Attorney General
820 North French Street, 6th Floor
Wilmington, Delaware 19801
(302)577-8400
Attorney for the State Defendants
ophelia.waters@state.de.us

EXHIBIT "C"

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TERRI LEE MEYER,                    )
                                    )   Civil Action No.
            Plaintiff,              )     06-117-SLR
                                    )
v.                                  )
                                    )
GEORGE O'CONNER, et al.,            )
                                    )
            Defendants.             )

        Deposition of GEORGE P. O'CONNOR taken pursuant
to notice at Baylor Women's Correctional Institution,
660 Baylor Boulevard, New Castle, Delaware, beginning
at 11:09 a.m., on Friday, June 22, 2007, before
Patricia L. Shelton, Registered Professional Reporter
and Notary Public.

APPEARANCES:

        LIAM Y. BRABER, ESQ.
        JACOBY DONNER, P.C.
            1700 Market Street - Suite 3100
            Philadelphia, Pennsylvania  19103
            and
        JULIA M. GRAFF, ESQ.
        ACLU OF DELAWARE
            100 West 10th Street - Suite 309
            Wilmington, Delaware  19801
            For the Plaintiff

        STUART B. DROWOS, ESQ.
        OPHELIA M. WATERS, ESQ.
        DEPARTMENT OF JUSTICE
            820 N. French Street
            Wilmington, Delaware  19801
            For the Defendants

ALSO PRESENT:   COLLEEN SHOTZBERGER    NEIL HUNT
                WARDEN PATRICK RYAN    SANJAY SHAH
                TERRI LEE MEYER
                WILCOX & FETZER
        1330 King Street - Wilmington, Delaware 19801
                    (302) 655-0477
                    www.wilfet.com

George P. O'Connor                    23

```
 1    A.   Yes.

 2    Q.   You mentioned Westlaw.  How do you go about

 3    physically accessing Westlaw?

 4    A.   Well, we have a Westlaw account.

 5    Q.   Are there computers in the law library?

 6    A.   Presently there's one.

 7    Q.   How many are there usually?  That's not a good

 8    question.

 9              How many computers were there when you

10    first arrived at the law library?

11    A.   Two.

12    Q.   And are those the computers that you use to do

13    the Westlaw research?

14    A.   Well, one of.

15    Q.   One of.

16              One has the account set up, is that the

17    concept?

18    A.   Yes.

19    Q.   If we move to supervising the law clerk, how

20    were those duties explained to you?  When you were

21    first hired, I'll say that.  Give it a time.

22    A.   Pretty much I would be responsible to ensure

23    that the inmate reported for work on time, would make

24    sure that the inmate would have the sign-in sheets for
```

George P. O'Connor                    24

1    that day out on the clipboard.  Usually they would --

2    or, she would go and pick up the sign-up sheets in the

3    units that we'd be doing that day.

4              She would pretty much tighten up the books,

5    as far as, you know, making sure that they were all in

6    order, nothing was disheveled.  Make sure that the

7    copies of, you know, some of the forms that we use --

8    sentence modifications are always on demand -- would

9    be stocked.

10   Q.   How big is the law library?  Is it as big as

11   this room that we're in?

12             MR. BRABER:  And just for the record, I

13   think this room is probably 25 by 15 -- how's that --

14   feet.

15             MS. SHOTZBERGER:  I think it's a little

16   bigger.  It's about twice the size of this.

17             MR. DROWOS:  I'd say my guesstimate would

18   be about 35, 40 feet long and about 15 wide.

19             THE WITNESS:  It's a little bit bigger.

20   BY MR. BRABER:

21   Q.   Do you have a desk in the law library?

22   A.   Yes.

23   Q.   Where is that desk located in relation to the

24   front door of the law library?

George P. O'Connor                    25

1      A.    It's actually in an office with glass windows.

2    And it's about, approximately -- to the front door of

3    the law library?

4             I'm guessing 25 feet.

5      Q.    Is the law clerk stationed somewhere when the

6    law clerk does their work or do they have a location,

7    a desk, anything like that?

8      A.    Yes.

9      Q.    Where is that located in relation to your desk?

10     A.    It's right outside the office window.

11     Q.    Within 5 feet?  Within 2 feet?  Can you give us

12   a distance?

13     A.    Well, it all depends.  Then or now?

14     Q.    Why don't we talk about when you first arrived

15   in 2005?

16     A.    Okay.  The law clerk's desk was right up

17   against my window.

18     Q.    And did that change at some point?

19     A.    Yes.

20     Q.    When did it change?

21     A.    February '06.

22     Q.    Why was that --

23     A.    Approximately.

24     Q.    Where was the law clerk relocated to in

George P. O'Connor                    26

1    February '06?

2        A.    From here (indicating) up against the wall.

3        Q.    Near your office?

4        A.    Right.  Out to the opposite wall.

5        Q.    Why was that change made?

6        A.    So I could observe what the law clerk was

7    doing.

8        Q.    Were you not able to observe the law clerk when

9    they were just 2 feet away?

10       A.    No.  Because they were facing me.

11       Q.    I think you -- I have to ask you to explain

12   that.

13                 Oh, you couldn't see -- that's not a glass

14   wall that you're talking about?

15       A.    Yes.  There's a glass wall there.

16       Q.    You're saying you couldn't see what the law

17   clerk was doing through the glass?

18       A.    Well, I could.  But the computer screen I

19   couldn't observe.

20       Q.    I see.  I see.

21                 Was there a computer station at the law

22   clerk's desk in 2005?

23       A.    Yes, there was.

24       Q.    How was the decision to move the law clerk's

George P. O'Connor          27

1    desk, how did that come about?

2      A.    I was in charge of the law library and that's

3    what I decided to do.

4      Q.    Did you have any reasoning behind that or did

5    you just figure move it to the other side?

6      A.    Well, my reasoning was that I could better

7    observe.

8      Q.    Why did you feel that you needed to observe

9    better?

10     A.    Closer supervision.

11     Q.    Why did you feel that you needed to supervise

12   more closely the law clerk?

13     A.    Well, it wasn't so much the law clerk, but how

14   the computer was being used.

15     Q.    How was the computer being used in 2005 when

16   you arrived there?

17     A.    To be honest, to this day I still don't know.

18     Q.    You don't know how the computer in the law

19   library was being used?

20     A.    Well, the computer I was using was for a

21   purpose, to assist the inmates with their legal

22   issues.  The computer that the inmate law clerk was

23   using, my understanding was some type of computer

24   course or something she was taking.  I don't know what

George P. O'Connor                28

1    she was doing with it.

2        Q.    Did the computer stationed at the law clerk's

3    desk have the Westlaw account on it?

4        A.    No.

5        Q.    That was on the computer in your office?

6        A.    Yes.

7        Q.    Were there any other computers besides those

8    two computers when you arrived in 2005?

9        A.    In the law library?

10       Q.    In the law library, yes.

11       A.    Before I arrived?

12       Q.    When you arrived.

13            When you arrived and you started your

14   job -- and you just were describing to me the layout

15   basically of where things were in the law library so I

16   could get an idea.

17            I lost my train of -- oh, were there any

18   other computers other than the one that was in your

19   office and the one you stated was stationed on the law

20   clerk's desk outside your office?

21       A.    No, there wasn't.

22       Q.    That was it.

23            Are there desks and various tables located

24   throughout the law library?

# EXHIBIT "D"



American Civil Liberties Union / Foundation of Delaware
100 West 10th Street, Suite 309,
Wilmington, Delaware 19801
(302) 654-5326 Fax (302) 654-3689
aclu@acludelaware.org    www.aclu-de.org

Sidney Balick
*President ACLU Delaware*
Serena M. Williams
*Vice President*
Anne M. Farley
*Second Vice President*
Judith E. Mellen
*Secretary*
Joan L. Rosenthal
*Assistant Secretary*
Grace E. Messner
*Treasurer*
Gilbert J. Sloan
*President ACLF Delaware*
Joan D. Kandler
*Treasurer ACLF*
Alice E. Eakin
*Affirmative Action Officer*

**Board of Directors**
John F. Abel, Jr.
Max S. Bell, Jr.
Timothy F. Brooks
Cecilia M. Cardesa-Lusardi
Alicia Clark
Nancy D. Dean
Joan DelFattore
Bernice M. Edwards
Helen K. Foss
Alan E. Garfield
Zaida I. Guajardo
Lawrence A. Hamermesh
Jeanne M. Hanson
Selma Hayman
Frederick W. Iobst
Phyllis Levitt
Elizabeth M. McGeever
Norman M. Monhait
Paulette Sullivan Moore
Joy Mulholland
Joseph S. Naylor
Darryl A. Parson
Jeffrey A. Raffel
Carl Schnee
Warren A. Scott
Sonia S. Sloan
Peggy E. Strine
Randy Tiffany
Leland B. Ware
Eric Wilensky

*Advisory Board*
Gary W. Aber
Mashoor I. Awad
Victor F. Battaglia, Sr.
Sam Beard
Henry H. Beckler
Richard G. Elliott, Jr.
Kathi A. Karsnitz
Bangalore T. Lakshman
Penny Marshall
John E. Osborn
B. Wilson Redfearn
Scott Reid
Joseph A. Rosenthal
Carolyn Walker

Drewry Nash Fennell, Esq.
*Executive Director*

July 10, 2007

Stuart B. Drowos, Esquire
Ophelia M. Waters, Esquire
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

Re:    Meyer v. Ryan, et al. 5/25/07 Discovery Request

Dear Stuart and Ophelia:

Regarding your 06/22/07 response to our Request for Production of Documents and Things, several items have come to our attention. In light of your representation to me on June 19, 2007 that all responsive documents had been produced, these recent developments (which include your June 22nd production of documents stamped 1495-1618) give us grave concern that discovery requests are being disregarded.

First, your formal responses and production are neither complete nor responsive, and are directly misleading. A prime example of this is your response that no documents have been destroyed, while subsequent deposition testimony revealed that documents pertaining directly to Ms. Meyer's claims in this lawsuit had been shredded.

Second, it appears that Ms. Meyer was required to submit monthly reports to Mr. O'Connor during the course of her employment, documenting her activities with each inmate with whom she met for more than 30 minutes. Mr. O'Connor then attached her report to his monthly report to Ms. Shotzberger. Such documents are plainly encompassed by our document requests, and they should be produced.

Third, please arrange for production of responsive documents from the computers of Mr. O'Connor, Ms. Shotzberger, and Mr. Ryan. Our previous document request included all documents (defined as electronic media as well as paper) related to Ms. Meyer and her complaint. Our request, of course, included all electronic mail. If all defendants' computers have been searched for documents responsive to our document requests (presumably in a manner similar to the "Files of Interest" report prepared for Ms. Meyer's computer), please confirm the results of such review in writing.

Although we have no wish to engage in discovery motion practice, we reserve the right to raise these and other issues via Motion, for which this letter may be entered as evidence.

I thank you for your time, and look forward to your response.

Sincerely,

Julia M. Graff
Staff Attorney

cc:    Liam Y. Braber, Esquire
       Christopher I. McCabe, Esquire

# EXHIBIT "E"

186

```
1                         I N D E X

2
        DEPONENT:  GEORGE P. O'CONNOR                PAGE
3
            Examination by Mr. Braber                    2
4           Examination by Mr. Drowos                 178

5

6                       E X H I B I T S

7    PLAINTIFF'S DEPOSITION EXHIBITS          MARKED

8       1                                   65
        2                                   90
9       3                                   111
        4                                   132
10      5                                   133
        6                                   135
11

12
     DOCUMENT REQUESTS                    PAGE
13
        1                                   139
14      2                                   146
        3                                   149
15      4                                   150
        5                                   153
16      6                                   159

17

18
     ERRATA SHEET/DEPONENT'S SIGNATURE    PAGE 187
19

20
     CERTIFICATE OF REPORTER              PAGE 188
21

22

23

24
```

George P. O'Connor                139

1       A.    It's the first I'm hearing of it.

2       Q.    Okay.  The last two pages of P-6 appear to be a

3    list in handwriting.  Have you seen that list before?

4       A.    Yes.

5             MS. WATERS:  Can we go off the record for a

6    minute?

7             (Discussion was held off the record.)

8             MR. BRABER:  It's been pointed out by

9    counsel, very helpfully, that the document is or could

10   be deemed illegible based on a copying of highlighted

11   terms.

12            I'll reserve my right to ask questions

13   about what is under the highlights when I get a copy

14   that is legible from counsel, which counsel

15   volunteered to supply.

16            Oh, that also reminds me, we'll count that

17   as a document request.  Could I ask that document

18   requests be noted and a list be created at the

19   beginning of the deposition transcript?

20            THE REPORTER:  I can do it in the index.

21            MR. BRABER:  Well, that's fine.

22            MS. WATERS:  Can we refer to the Bates

23   stamp numbers so I'll know exactly which ones to pull

24   up?

George P. O'Connor                    145

1    you recall the time frame when she was moved from

2    unit three to unit six?

3      A.    No, I don't.

4              As far as the housing goes and where she's

5    housed and when she's moved around and stuff, I don't

6    know.  I heard she was moved out of wherever she was.

7      Q.    But you were still concerned about the books

8    after the move?

9      A.    Well, as in this prison, like every other

10   prison, you have inmates that come and tell you.  You

11   know, they were telling me that she still has books.

12     Q.    Were you asking inmates about Terri Meyer's

13   actions after her termination?

14     A.    No.

15     Q.    How were you having occasion to have

16   conversations with them about her?

17     A.    When they come in the law library, they confide

18   in me.  Why, I don't know why.  They do.  They tell me

19   things that, you know, they need not tell me.  I tell

20   them, you know, there's internal affairs.  There's

21   other avenues, you know.  If it doesn't pertain to me,

22   it's not a breach of security, you know...

23              A lot of times inmates like someone to vent

24   to.

George P. O'Connor          146

1      Q.    Fair enough.

2                   Looking at P-5, probably my last question

3      on P-5 --

4                   MR. BRABER:  Counsel, you might want to

5      look at this, too.

6      Q.    There's a list.  P-5 and P-4 state that

7      there's --

8                   MS. WATERS:  Let me pull them out so I

9      can --

10                  MR. BRABER:  Okay.  Sorry.

11                  MS. WATERS:  P-5 and P-4?

12                  MR. BRABER:  Well, either one.  It doesn't

13     matter.  I'm just making a document request.  And it's

14     going to be the second document request, I guess.

15     BY MR. BRABER:

16     Q.    There appears to be -- it refers to a list,

17     list of publications that Terri Meyer has in her

18     possession are contained in the files of the law

19     library.  Are you familiar with those lists?

20     A.    Obviously not.

21                  MR. BRABER:  Well, to the extent that those

22     lists exist, I would like to request a copy of those

23     lists.

24                  MS. WATERS:  It references lists of

George P. O'Connor                147

1    publications?

2                    MR. BRABER:  Currently in her possession

3    are contained in the files of the law library.

4    BY MR. BRABER:

5        Q.   And can I ask you, sir, to take a look in the

6    law library?  And if there are such lists, provide

7    them to your counsel?

8        A.   If there is a list, I just want it to be known

9    that it would have been generated by my predecessor.

10       Q.   Oh, okay.

11       A.   As far as I remember.

12       Q.   You made no effort to keep a list of books that

13   she was allowed to have?

14       A.   No.  Like I said before, it was a carryover

15   from what was already established.

16       Q.   Do you retain or do you know of copies of the

17   letters that you referred to, that you referred to

18   regarding Ms. Meyer's request for documents back?

19       A.   What do you mean?  The letters she wrote to me?

20       Q.   Yes.

21       A.   Do I have them?

22       Q.   Do you have them?

23       A.   No, I don't.

24       Q.   What happened to those?

George P. O'Connor                148

1    A.   I shred them as I do with all inmate

2  communications.

3    Q.   You didn't think, boy, I better hold on to this

4  because it might be part of something that's

5  important?

6    A.   No.  Because I had no interest in it, number

7  one.  And, number two, if I was to keep the letters

8  that I got from inmates, I would need a room this size

9  just to house them.

10    Q.   Do you keep your own files in your office at

11  the law library?

12    A.   Yeah.  I have some files, yes.

13    Q.   Are there any files related to Terri Meyer in

14  that?

15    A.   There is -- yes, there is.

16    Q.   Have those been provided to counsel?

17    A.   I believe so.

18         MR. DROWOS:  Counsel, just to clarify, is

19  this something that's referenced in one of the

20  exhibits or just based on the testimony --

21         MR. BRABER:  He just said he shredded

22  documents.  And I'm wondering what else is there that

23  exists.

24         THE WITNESS:  Well, the letters that you

George P. O'Connor                149

1    said that she wrote to me.

2            MS. WATERS:  I'm sorry.  If I may, the

3    letters that you are talking about, is that the

4    letters that are referred --

5            MR. BRABER:  Oh, I'm sorry.  Yes.  The

6    letters that I'm referring to -- I apologize.  The

7    letters that I was referring to came from Terri Meyer

8    are actually referenced in a document.

9            MS. WATERS:  These letters here, are these

10   letters you gave to counsel?

11           THE WITNESS:  Okay.

12           MS. WATERS:  I'm asking.  Are they?

13           THE WITNESS:  I gave you whatever I had.

14   But I don't keep -- it's not customary for me to keep

15   letters from -- I have a pile of letters just from

16   today alone that I have to go through.  There's no way

17   I could keep them all.

18           MR. BRABER:  Okay.  I understand.  But you

19   did say you had files.  And I would like you to take

20   those files and provide those to counsel.

21           MS. WATERS:  Can we go back?  He said he

22   had files.  What files?  I missed something here.

23           THE WITNESS:  Well, the files I have are

24   the papers that I was served and stuff regarding the

George P. O'Connor                    150

1  lawsuit.

2  BY MR. BRABER:

3      Q.   Do you keep notes, memoranda, a diary, anything

4  like that or files, personnel files that you might

5  have concerning Terri Meyer?

6           I mean, you're saying you have these

7  disagreements with her.  Did you write down anything

8  regarding it?  Did you send letters to your

9  supervisor, a note to your supervisor?

10     A.   No.  Because, again, I thought we could work it

11 out.  I tried to be as amicable as I could.  There may

12 be some files that were generated from my predecessor

13 that -- I'm pretty sure everything was turned over.

14     Q.   Is there a personnel file?

15     A.   This is a file...

16          I have to go back and look just to be sure.

17     Q.   Well, I have to say, I don't think I have been

18 provided with those documents.  So can I ask you to

19 take a look?  If there's an employee file or a

20 personnel file or those documents you're referring to,

21 I'm asking you to provide them to counsel.

22          MR. BRABER:  And we'll make this document

23 request four.

24          I mean, there's testimony that they're

George P. O'Connor                    151

1    shredded.  At this point, I have no reason to

2    disbelieve that.  But I would like to request them

3    anyway.  There may be copies.  There are disciplinary

4    reports referring to them.  Maybe they're in the

5    files.

6              MS. WATERS:  That's fine.  That's

7    understood.

8              But you also just mentioned something about

9    files, employee files.  What employee files are we

10    referring to now?

11              MR. BRABER:  I'd love to know.

12              Ms. Meyer was an employee of the prison law

13    library.  I presume she has some sort of file.  And I

14    think that Mr. O'Connor just mentioned that he might

15    have some stuff relating to her.  So that is -- see,

16    not having it, I don't know what I'm requesting.  But

17    I would like to request Mr. O'Connor to go review his

18    files and provide them to you.  You can review them

19    and provide them to me.

20              THE WITNESS:  I thought I already did.

21              MR. DROWOS:  Assuming that there is

22    anything that would be remotely related to or

23    constituting a personnel file for this particular

24    employee.

George P. O'Connor                 152

1          MR. BRABER:  Well, I mean, files related to

2     this employee.  It doesn't have to be a formal file.

3     It could be two pieces of paper.  I mean, I don't know

4     what there is.

5          MR. DROWOS:  I understand.  But anything

6     that might in your estimation, your characterization,

7     that is deemed to be, quote, a personnel file as such

8     of this particular individual plaintiff that you

9     represent.

10          MR. BRABER:  Well, I don't want to limit it

11     in that way.  Because --

12          MR. DROWOS:  Well, anything related to

13     anybody else who may have been a prior or subsequent

14     employee would not be germane or relevant to this

15     particular proceeding.

16          MR. BRABER:  Well, I'm not going to debate

17     that at this point.  But I think I can limit it to

18     files related to Terri Meyer.

19          MR. DROWOS:  And that's what we're

20     suggesting.  And that's what I just characterized.

21          MR. BRABER:  And documents related to

22     Terri Meyer.

23          MR. DROWOS:  Exactly.  If, in fact, they

24     exist.

George P. O'Connor                  153

1           MR. BRABER:  Oh, yeah.  I have no problem

2    with that.

3           MR. DROWOS:  And, again, just to clarify on

4    the record, this is separate and apart from what is

5    known as the institutional file of the individual,

6    which normally would not be something that would be

7    provided.

8    BY MR. BRABER:

9      Q.   Have you ever had a conversation with

10   Mona Harriston regarding Terri Meyer?

11          THE WITNESS:  Can we take a break so I can

12   go to the bathroom, please?

13          MR. BRABER:  Oh, certainly.  Certainly.

14          (A short recess was taken.)

15          MR. BRABER:  Regarding internal affairs,

16   there's been some discussion of internal affairs'

17   investigation of the alleged charging by Ms. Meyer.

18          At this point, I have one document that

19   looks like it came from internal affairs.  If there

20   are further documents, a report or a file kept by

21   internal affairs regarding Terri Meyer, I would like

22   to request that.  And specifically including, but not

23   limited to, the October '05 incident, which is the

24   last three pages of Exhibit P-3, which is where the

George P. O'Connor                    154

1    facts from internal affairs is reflected.

2              So if there's a file, documents about that,

3    I will request that.  And I think I'm up to number

4    five.

5    BY MR. BRABER:

6      Q.   Mr. O'Connor, with regard to the Dorio and

7    Brooks grievances that I was just referring to in P-3,

8    I just want to clarify, did you believe them when you

9    investigated, you yourself personally?

10     A.   Yes.

11     Q.   Did you tell something different to

12   Terri Meyer?

13     A.   I don't recall exactly what I said.  But I was

14   willing to, you know, warn and admonish, you know,

15   take no further action.

16     Q.   You never received another grievance like the

17   ones that are contained in P-3, did you?

18     A.   No.

19     Q.   The incident at Terri Meyer's cell -- just to

20   be clear, how many times have you visited

21   Terri Meyer's cell or outside it?

22     A.   I believe that's the only time.

23     Q.   And you had a confrontation with

24   Deputy Warden Martin?

George P. O'Connor               155

1     A.   If -- words were exchanged.

2     Q.   What did you say?

3     A.   I didn't say nothing.  I tried to be as

4  respectful as I could.

5     Q.   Well, you said "exchanged."  You said "words."

6     A.   Well, she came down yelling at me.  And I don't

7  recall the sum of it, all that transpired.  But --

8     Q.   If I talk to her, what is she going to say?

9     A.   I guess you'll have to ask her that.

10     Q.   What's her opinion of you?

11     A.   Probably --

12          MS. WATERS:  Objection to form.

13     Q.   Do you perceive any hostility from

14  Deputy Warden Martin towards you?

15     A.   I believe she doesn't like me.

16     Q.   Why?

17     A.   She doesn't acknowledge me when I say hello to

18  her.

19     Q.   Does it have something to do with Terri Meyer?

20     A.   You'd --

21          MS. WATERS:  Objection to form.

22     A.   You'd have to ask her that question.  I don't

23  know.

24     Q.   Has she ever told you to leave Terri Meyer

George P. O'Connor                    159

1    occasions.

2        Q.   Why is she suing you?

3        A.   I don't know.  Different issues.

4        Q.   What are those issues?

5        A.   I don't know.  I'd have to go and get the

6    complaint and look at it.

7        Q.   Is it a civil rights issue?

8        A.   I guess.  I don't know.

9             Yeah, I assume that's what it was.

10       Q.   Is she represented by counsel?

11       A.   I don't know.

12            MR. BRABER:  I'd like to request a copy of

13   that complaint.  Make that document request number

14   six.

15   BY MR. BRABER:

16       Q.   Have you ever spoken with Corporal Raynes

17   regarding Terri Meyer?

18       A.   I probably have in the past.

19            Let me clarify that.  The name is familiar

20   in that Terri didn't get along with Raynes for

21   whatever reason.  She used to complain to me that she

22   was always picking on her.

23       Q.   Did you take any action regarding that?

24       A.   No, I didn't.

# EXHIBIT "F"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |  |
|---|---|---|---|
| TERRI LEE MEYER, | | : | |
| | Plaintiff, | : | |
| | | : | No. 06-117-SLR |
| v. | | : | |
| | | : | CIVIL ACTION |
| PATRICK RYAN, COLLEEN | | : | |
| SHOTZBERGER, and GEORGE | | : | |
| O'CONNOR, | | : | |
| | Defendants. | : | |

### NOTICE OF SERVICE

The undersigned certifies that on June 25, 2007, counsel for Plaintiff Terri Lee

Meyer caused her First Set of Interrogatories to be delivered to the following persons by

first class mail, postage paid, and by electronic transmission:

Stuart Drowos, Esq.
Ophelia Waters, Esq.
Department of Justice
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
Ophelia.Waters@state.de.us

**ACLU FOUNDATION**
**OF DELAWARE**

/s/ Julia M. Graff
Julia M. Graff, I.D. # 4708
100 W. 10th Street, Suite 309
Wilmington, DE 19801
jgraff@acludelaware.org

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TERRI LEE MEYER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 06-117-SLR |
| vs. | : | |
| | : | JURY TRIAL DEMANDED |
| PATRICK RYAN, et al., | : | |
| Defendants. | | |

**INTERROGATORIES OF PLAINTIFF DIRECTED TO DEFENDANTS – <u>FIRST SET</u>**

TO:   Defendants Ryan, O'Connor, and Shotzberger
      c/o  Ophelia M. Waters, Esq.
      Deputy Attorney General
      Delaware Dept. of Justice
      Carvel State Office Building
      820 North French Street, 6th Floor
      Wilmington, DE 19801

**PLEASE TAKE NOTICE,** Plaintiff hereby demands that Defendants answer the following Interrogatories separately and fully under oath and signed by the person making the Answer pursuant to the Rules of Civil Procedure.  The person answering the Interrogatories shall designate which information is not within his or her personal knowledge and, as to that information shall state the name and address of every person from who it was received, or, if the source of the information is documentary, a full description including the location thereof.

These Interrogatories shall be deemed continuing and any further information secured subsequent to the filing of your Answers, which would have been includable in the Answers had this information been known or available, are to be supplied by Supplemental Answers.  Further, if you cannot furnish the specific information called for by any of these Interrogatories, please furnish the best information you have.

**PLEASE TAKE NOTICE,** that based upon Document Requests directed to you previously, for which you are under a continuing duty to supplement, please produce any and all documents referred to, relied upon, or identified in answering the within Interrogatories.

1

**IN ANSWERING THESE INTERROGATORIES**, you shall furnish all information available at the time of answering, including information in the possession of your agents and shall supplement your answers in accordance with the Rules of Civil Procedure.

**IN ANSWERING THESE INTERROGATORIES**, wherever you are requested to identify a series of persons, documents, oral communications or things and to provide additional information relating thereto, list the additional information so that it is clear to which item the additional information relates.

## DEFINITIONS

A.     "Defendant(s)", "you" and "your" are used herein to refer to Defendants Ryan, O'Connor, and Shotzberger collectively (or any one Defendant if so designated, or if a Defendant has information that the others do not have), and their agents, representatives, employees, partners, attorneys, and those under their direction or control.

B.     "Plaintiff" or "Meyer" shall refer to Plaintiff Terri L. Meyer, her agents, representatives, employees, attorneys, and those under her direction or control.

C.     The "Incident(s)" shall refer to any and all events, facts and circumstances referred to in the First Amended Complaint, including but not limited to confiscation of legal materials and related events.

D.     "Entity", "Person" or "Persons" shall mean all individuals and entities, including, without limitation, individuals, representative persons, agencies, associations, companies, corporations, partnerships, limited partnerships, joint ventures, trusts, estates, public agencies, departments, divisions, bureaus, and wards.

E.     Any word in past tense includes the present, and vice versa.  The masculine gender includes the feminine, and vice versa.  Words in the singular shall include the plural, for example, "state the date" shall mean "state the dates."

F.     "Act" shall mean any action or conduct.

G.     "Document" or "documents" is used in its customary broad sense and includes all written, typed, printed, recorded or graphic statements, communications or other matter, however produced or reproduced, including, without limitation, all writings; checklists; inventories; drafts; order forms; pay-stubs; checks; analyses; reports; agreements; contracts; communications; letters or other correspondence; messages; telegrams; telexes; telegrams; cables; e-mail; cd-rom data; Internet websites, data stored on Internet websites; Internet webpages; data stored on the Internet in servers or on web-storage sites; data stored on computer memory of any kind; memoranda; records; notes; summaries; interoffice communications; bulletins; circulars; pamphlets; photographs; studies; notices; invoices; diagrams; plans; drawings; diaries; charts;

2

schedules; job reports; change orders; sound recordings or transcripts of personal or telephone conversations; correspondence; memoranda; telephone logs; demands for payment; requests for indemnification; requests for information; and any other document, writing or other data compilation of whatever description, including but not limited to any information contained in any computer, although not yet printed out or in the memory units containing such data from which information can be obtained or translated into reasonable usable form, and all drafts and non-identical copies of the foregoing as well as any other tangible thing which constitutes or contains matter within the proper scope of discovery and which are in the your possession, custody or control.

H.    "Oral communication" or "oral statement" shall mean any and all non-written forms of expression or communication whether face-to-face, by telephone, in a conference or otherwise.

I.    "Identify" or "identification" shall mean, when referring to a natural person, that the following information is to be provided:

    (a)    his/her full name;

    (b)    present or last known address and **telephone number**;

    (c)    his/her present or last known business affiliation, title and occupation;

    (d)    each of his/her positions, titles or job descriptions during the period of time covered by any answer referring to such persons;

    (e)    the person or persons whom he represented or for whom he was acting during the period of time covered by any answer referring to such person.

J.    "Identify" or "identification" shall mean, when referring to a corporation, to provide the corporation's full name, each state in which it is incorporated and the address of its principal place of business.

K.    "Identify" or "identification" shall mean, when referring to an entity other than a natural person or corporation (e.g., an association, partnership, limited partnership, etc.) to provide an official name or designation or each such entity, each state in which such entity is registered and the address of its principal place of business.

L.    "Identify" or "identification" shall mean, when referring to any act, to provide the following information:

    (a)    a description of the substance of a the event constituting each act;

    (b)    identification of the location, date, and persons involved;

    (c)    identification of any documents arising from reflecting, recording, or relating to each act.

M.    "Identify" or "identification" shall mean, when used in reference to any document, to provide the following information:

    (a)    the type of document (e.g., letter, memorandum, telegram, etc.);

(b)  the date of its preparation;

(c)  the date of any revisions to it;

(d)  its title (if any);

(e)  a description of its general subject matter and contents;

(f)  identification of its present location and custodian;

(g)  identification of its author or originator;

(h)  identification of the author or originator of any revisions to it;

(i)  identification of each person to whom the document was sent or to whom the contents of the document were made known or revealed;

(j)  if the document is no longer in your possession, identification of its last known custodian, a description of the circumstances under which it passed from your control to that person and the identification of each person having knowledge of such circumstances and/or the present location of the document.

N.    "Identify" or "identification" shall mean, when used in reference to a thing other than a document, act or person, to state the nature of the thing, its location, and a description sufficient to distinguish it from other similar things.

O.    "Date" shall mean the exact day, month and year, if ascertainable, or, if not, the best approximation thereof in relation to other events.

P.    "State the factual basis for" or "state all facts upon which you rely" shall mean to set forth in a clear and concise manner all facts viewed by you as being supportive of or relevant to the premise, position, contention, conclusion or other matter which is the subject of the Interrogatory.

Q.    "Describe" shall mean to set forth fully and clearly every fact and/or event of which you have knowledge and which is relevant to the answer called for by the Interrogatory or which is the factual basis for the answer called for by the Interrogatory.

R.    All accounting terms, legal terms and/or technical terms associated with any particular industry, profession or identifiable body of knowledge shall have the meanings customarily and ordinarily associated with those terms within such industry, profession, or discipline.

S.    "Incident Report" and "Disciplinary Report" shall have their plain meaning within the Department of Corrections, including all such reports prepared for the Department's DACTS system, and any other system of reporting disciplinary violation or other incidents related to inmates of BWCI, whether officially or unofficially, whether formally or informally.

## **INTERROGATORIES**

     1.     Identify each and every occasion, from July 1, 2005 to present, that Defendant O'Connor prepared an Incident Report or Disciplinary Report related in any way to Plaintiff Meyer.

     In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system, and include a brief description of the facts upon which each such report was based.

2.     Identify each and every occasion, from July 1, 2005 to present, that Defendant O'Connor supplied information (whether by direct conversation to other personnel, by telephone call to other personnel, by supply of written documentation, or otherwise) for an Incident Report or Disciplinary Report related in any way to Plaintiff Meyer.

In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system and include a brief description of the facts upon which each such report was based.

6

3.    Identify each and every occasion, from July 1, 2005 to present, that Defendant Shotzberger prepared an Incident Report or Disciplinary Report related in any way to Plaintiff Meyer.

In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system, and include a brief description of the facts upon which each such report was based.

4.    Identify each and every occasion, from July 1, 2005 to present, that Defendant Shotzberger supplied information (whether by direct conversation to other personnel, by telephone call to other personnel, by supply of written documentation, or otherwise) for an Incident Report or Disciplinary Report related in any way to Plaintiff Meyer.

In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system and include a brief description of the facts upon which each such report was based.

5.      Identify each and every occasion, from July 1, 2005 to present, that Defendant Ryan prepared an Incident Report or Disciplinary Report related in any way to Plaintiff Meyer.

In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system, and include a brief description of the facts upon which each such report was based.

9

6.      Identify each and every occasion, from July 1, 2005 to present, that Defendant Ryan supplied information (whether by direct conversation to other personnel, by telephone call to other personnel, by supply of written documentation, or otherwise) for an Incident Report or Disciplinary Report related in any way to Plaintiff Meyer.

In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system and include a brief description of the facts upon which each such report was based.

7.    Identify each and every occasion, from July 1, 2005 to present, that Defendant O'Connor prepared an Incident Report or Disciplinary Report related in any way to an inmate of BWCI (other than Plaintiff Meyer).

In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system, and include a brief description of the facts upon which each such report was based.

8.     Identify each and every occasion, from July 1, 2005 to present, that Defendant O'Connor supplied information (whether by direct conversation to other personnel, by telephone call to other personnel, by supply of written documentation, or otherwise) for an Incident Report or Disciplinary Report related in any way to an inmate of BWCI (other than Plaintiff Meyer).

In answering this Interrogatory, please list each occasion separately by date (or closest approximation), date (or closest approximation) that any identified report was filed in the Department of Correction DACTS system and include a brief description of the facts upon which each such report was based.

9.     Identify each and every document shredded or otherwise destroyed or discarded by Defendant O'Connor, from July 1, 2005 to present, which related to or referred to Plaintiff Meyer in any way.

In answering this Interrogatory, please indicate the date (or closest approximation) that each document was shredded, destroyed or discarded.

10.    Identify each and every policy, guideline, standard practice, and custom of BWCI (whether originating at BWCI or from the Department of Corrections, or other department or agency) regarding retention of documents (including letters, requests, grievances, and complaints) prepared by inmates and delivered to BWCI employees/officials.

11.    Identify each and every policy, guideline, standard practice, and custom of BWCI (whether originating at BWCI, or from the Department of Corrections, or other department or agency) regarding transmission of inmate legal documents to counsel.

12.     Identify each and every policy, guideline, standard practice, and custom of BWCI (whether originating at BWCI, or from the Department of Corrections, or other department or agency) regarding inmate employees, including policies, guidelines, practices and customs regarding inmate employee files/records and the manner in which such files are kept.

13.    Identify each and every person you expect to call as a witness at trial, and, for each person identified, please identify the facts and subject matter about which he/she is expected to testify.

14.     Identify each expert witness who will testify at trial.  In answering this interrogatory, please identify all facts to which each expert witness is expected to testify, the substance of each and every opinion to which each expert witness is expected to testify, the factual basis of each opinion that will be offered as testimony at trial, and all documents provided to each expert witness.

Dated: June 25, 2007          By:     /s/ Julia M. Graff
                                        Julia M. Graff, Esquire (No. 4708)
                                        ACLU Foundation of Delaware
                                        100 W. 10th Street, Suite 309
                                        Wilmington, DE 19801
                                        Phone: (302) 654-5326, ext. 103
                                        Fax: (302) 654-3689

                                        /s/Liam Y. Braber
                                        Christopher I. McCabe, Esquire
                                        Liam Y. Braber, Esquire
                                        JACOBY DONNER, P.C.
                                        1700 Market Street, Suite 3100
                                        Philadelphia, PA 19103
                                        Phone: (215) 563-2400
                                        Fax: (215) 563-2870

                                        *Counsel for Plaintiff, Terri Lee Meyer*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TERRI LEE MEYER,                    )
                                    )
            Plaintiff,              )
                                    )    Civil Action
v.                                  )    No. 06-117 (SLR)
                                    )
PATRICK RYAN, COLLEEN               )
SHOTZBERGER and GEORGE              )
O'CONNOR,                           )
                                    )
            Defendant.              )

        Deposition of COLLEEN SHOTZBERGER taken
pursuant to notice at the Delores J. Baylor Women's
Correctional Institution, 660 Baylor Boulevard, New
Castle, Delaware, beginning at 1:46 p.m., on Friday,
August 17, 2007, before Eleanor J. Schwandt, Registered
Merit Reporter and Notary Public.


APPEARANCES:

        DREWRY N. FENNELL, ESQ.
        UMBREEN S. BHATTI, ESQ.
        AMERICAN CIVIL LIBERTIES FOUNDATION OF DELAWARE
          100 West 10th Street - Suite 309
          Wilmington, Delaware  19801
          for the Plaintiffs

        OPHELIA M. WATERS, ESQ.
        STUART B. DROWOS, ESQ.
        DEPARTMENT OF JUSTICE
          820 North French Street
          Carvel State Office Building
          Wilmington, Delaware  19801
          for the Defendants


                WILCOX & FETZER
    1330 King Street -  Wilmington, Delaware 19801
                  (302) 655-0477
                  www.wilfet.com



**WILCOX & FETZER LTD.**
Registered Professional Reporters



27

1    office.  And I believe there are -- I don't know if there

2    still is but there were two printers.

3        Q.   How about are there any other kinds of

4    institution-specific materials, like policies and

5    procedures, anything else that would be available to

6    inmates?

7        A.   Yes, there should be.

8        Q.   Do you know what those are?

9        A.   I believe the law librarian has a set of policies

10   and procedures that the rest of us get from the Bureau of

11   Prisons.  He may or may not have a complete set.  He may

12   or may not have the Bureau of Prisons classification

13   policy and procedure.

14            I imagine probably he would have a copy of

15   the inmate manual, the inmate institution orientation

16   booklet or the rules or disciplinary code or something

17   like that.

18       Q.   What kind of reports does Mr. O'Connor make to

19   you regarding activities in the law library?

20       A.   I get a monthly report from him.

21       Q.   And what does that report contain?

22       A.   It contains how many copies were made, how many

23   appointments were made by inmates, how many were actually

24   seen.



WILCOX & FETZER LTD.
Registered Professional Reporters